VANDENDRIES v GENERAL MOTORS CORPORATION

Docket No. 66845. Submitted July 20, 1983, at Lansing.—Decided October 5, 1983.

Plaintiff, Joseph C. Vandendries, was an hourly employee of defendant, General Motors Corporation. In 1968, plaintiff was promoted to a supervisory position, for which he was paid a salary. Plaintiff claimed that in 1968 he started performing the duties of a general shift foreman, although he only was paid the salary of a maintenance supervisor, because he was promised that he would be appointed to fill what he felt was a vacancy in the position of a general shift foreman. Plaintiff says that in 1976 he was passed over and another person appointed. When plaintiff retired in 1980, he brought suit in the Shiawassee Circuit Court for breach of employment contract, seeking money damages, the better fringe benefits of a foreman, etc. Defendant denied plaintiff's version of the facts. The court, at the close of plaintiff's proofs, granted a directed verdict for defendant, Peter J. Marutiak, J. Plaintiff appealed. *Held:*

1. The trial court properly granted a directed verdict for defendant. Plaintiff's proofs were weak and damages, highly speculative.

2. Plaintiff signed a written employment agreement stating that there were no other agreements between the parties and signed compensation statements in 1978, 1979, and 1980 which declared that plaintiff had received all the compensation due him. Plaintiff claimed he did not read the agreement and that he thought that signing the compensation statements was a formality necessary to qualify him for his annual raise and paycheck. Mere failure to read a written agreement, unaccompanied by other facts indicating fraud or deception, is insufficient to avoid the terms of the contract.

3. The period of limitations is six years for an action to

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 489 *et seq.*
[2] 17 Am Jur 2d, Contracts § 149.
[3] 51 Am Jur 2d, Limitation of Actions §§ 107, 126 *et seq.*

recover damages or sums due for a breach of contract. A cause of action accrues when a breach of contract occurs, namely, when the promisor fails to perform under the contract. Defendant, if he had proven breach of contract, would have been limited to recovery of damages sustained on or after October 20, 1974.

Affirmed.

1. TRIAL — MOTIONS — DIRECTED VERDICT — EVIDENCE — PRIMA FACIE CASE.

In deciding whether to grant a motion for a directed verdict, the trial judge must accord to the nonmoving party the benefit of viewing the testimony and all the legitimate inferences that may be drawn from it in a light most favorable to the nonmoving party; if the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict should be denied.

2. CONTRACTS — DEFENSES.

Mere failure to read a written agreement, unaccompanied by other facts indicating fraud or deception, is insufficient to avoid the terms of the contract.

3. CONTRACTS — CAUSE OF ACTION — LIMITATION OF ACTIONS.

The period of limitations is six years for an action to recover damages or sums due for a breach of contract; a cause of action accrues when a breach of contract occurs, namely, when the promisor fails to perform under the contract.

*Hoy & Lostracco* (by *Gordon W. Hoy),* for plaintiff.

*Milliken, Magee & Yuille* (by *Herbert A. Milliken, Jr.),* for defendant.

Before: BEASLEY, P.J., and ALLEN and G. R. DENEWETH,* JJ.

PER CURIAM. Plaintiff, Joseph C. Vandendries, a long-time hourly rated employee of the Grand Blanc Fisher Body Plant of defendant, General Motors Corporation (GMC), was promoted in 1968

* Circuit judge, sitting on the Court of Appeals by assignment.

to a supervisory position, for which he was paid a salary on a monthly basis.

After 1968, the facts are in dispute. Plaintiff claims that in 1968 he started performing the duties of a general shift foreman, although he only was paid the salary of a maintenance supervisor, because he was promised that he would be appointed to fill what he felt was a vacancy in the position of a general shift foreman. Plaintiff says that in 1976 he was passed over and another person appointed. When plaintiff retired in 1980, he brought suit for breach of employment contract, seeking money damages, the better fringe benefits of a foreman, etc. Defendant denies plaintiff's version of the facts.

The case was tried before a jury. After plaintiff put in his proofs, defendant moved for a directed verdict, claiming that: (1) the plant engineer with whom plaintiff claimed to have agreed lacked authority to make the contract claimed by plaintiff, (2) plaintiff's claims were barred by the statute of limitations, (3) the proofs were insufficient and lacked the necessary specificity to establish a valid, enforceable contract, and (4) plaintiff was barred and estopped from receiving further compensation because he had given regular written acknowledgements (releases) that he had received all the compensation to which he was entitled. The trial court granted defendant's motion and dismissed plaintiff's case.

In a ruling from the bench, the trial judge emphasized the annual compensation agreements (releases) given by plaintiff in 1978, 1979, and 1980. As additional reasons, the trial judge said: (1) there was insufficient proof as to the authority of the plant engineer, upon whose testimony plaintiff relied so heavily, to increase plaintiff's compen-

sation and benefits, (2) that part of the money damages sought on an unjust enrichment theory was barred by the statute of limitations, and (3) that, in any event, the proofs, if any, of loss of wages and retirement benefits were far too speculative to support plaintiff's claim.

Plaintiff appeals as of right. After review on appeal, we affirm.

In deciding whether to grant a defendant's motion for a directed verdict, the trial court must view the evidence and all legitimate inferences that may be drawn therefrom in a light most favorable to plaintiff; if the evidence, when examined in this manner, establishes a prima facie case, the motion for directed verdict should be denied.[1]

In this contract case, plaintiff claimed that defendant breached express and implied contracts made with plaintiff. While his claims are somewhat less than specific, plaintiff seems to claim that defendant promised to compensate plaintiff during the period from 1968 to 1976 for the difference in pay between the rate for a maintenance foreman, which he in fact received, and the rate for a general foreman, which position he claimed to have actually held, by promoting him to general foreman. The proofs regarding the alleged breach of contract, even when viewed in the most favorable light to plaintiff, are weak. The proofs regarding damages are highly speculative.[2]

---

[1] *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975); 6 Callaghan's Michigan Pleading & Practice (2d ed), § 38.88, pp 150-151.

[2] To this effect, plaintiff testified on direct examination as follows:

*"Q. [Plaintiff's Attorney]:* All right. And at that time did you have occasion to ask for any extra compensation for the extra duties?

*"A. [Plaintiff]:* I told him then, I said you know that's capacity of a general supervisor, I should get extra money. And he said that'll come in the future.

*"Q.* He said that will come in the future?

*"A.* That's right.

Thus, even if the only issue on appeal were whether these proofs were sufficient to take plaintiff to the jury, we would be inclined to affirm the trial judge's grant of directed verdict in favor of defendant. But, in addition to this basis, defendant claims plaintiff is barred and estopped from additional compensation by the annual compensation agreements that he signed during the years in question.

The record indicates that in 1968, when plaintiff left the hourly rated ranks and went on a monthly salary basis, he signed a written employment agreement with defendant which referred to and included a separate, signed compensation statement. Among other things, the employment agreement included the following:

"The Employer and the employee acknowledge that there are no other arrangements, agreements, or understandings, verbal or in writing, regarding same and that any modification or amendment hereof, other than a cancellation and replacement hereof by another written form of agreement must be endorsed hereon in writing and initiated by both the employee and the Employer."

Thereafter, and particularly in 1978, 1979, and 1980, plaintiff signed annual compensation statements which included, among other things, the following:

"In consideration of my continued employment as evidenced by the 'Employment Agreement' herein re-

"*Q.* And what did you take that to mean?

"*A.* Pardon?

"*Q.* And what did he mean by that?

"*A.* I took it that he meant that in the future that I'd either get compensated for the time I spent as a lead supervisor or that I would be promoted to a general supervisor."

ferred to, I acknowledge that I have received all compensation due me as an employee of yours for all services rendered during all periods ending prior to and on the last day of the month immediately preceding the date of signing of this statement."

In attempting to avoid the effect of this language, plaintiff claimed that: (1) he did not read the agreement before signing, (2) he thought it was a formality necessary to qualify him for his annual raise and paycheck, and (3) the release was not "fairly and knowingly made".

As a general rule, the mere failure to read an agreement, unaccompanied by other facts indicating fraud, artifice, or deception, is not enough to avoid a contract.[3] We do not find *Romero v King*,[4] a case cited by plaintiff, apropos or controlling here. We conclude that on this record plaintiff has not avoided the legal effect of the releases that he signed.[5]

---

[3] *Saginaw Medicine Co v Lee,* 226 Mich 561, 565-566; 198 NW 200 (1924); *Collier v Stebbins,* 236 Mich 147, 155-156; 210 NW 264 (1926). See, generally, 17 Am Jur 2d, Contracts, §§ 149, 152, pp 497-500, 503-504; *Upton v Tribilcock,* 91 US 45, 50; 23 L Ed 203, 205 (1875).

[4] 368 Mich 45; 117 NW2d 119 (1962). In *Romero,* the plaintiff, a Mexican with a third-grade education, sustained 27 bone fractures in an automobile accident. Defendant, in exchange for a release of all claims, paid $500 to the plaintiff while he was in the hospital. The *Romero* Court held that, on the record below, the defendant did not establish, as a matter of law, the affirmative defense of release. Particularly, it was held that the circumstances surrounding the issuance of the release revealed overreaching and unfair advantage on the part of the defendant.

[5] The following passage contained in 66 Am Jur 2d, Release, § 16, p 691, supports the trial court's holding that plaintiff's assertion that he did not read the releases does not prevent them from taking effect:

"It is also true that a person who, without coercion or undue persuasion, executes a solemn release cannot subsequently impeach it on the ground of his own carelessness, if at the time of its execution he might have advised himself fully as to the nature and legal effect of the act done. He cannot then complain that an imposition has been practiced upon him, and if he knows or by inquiry might know the exact nature of the act done, cannot subsequently invoke his own heedlessness to impeach his release by calling such heedlessness

While unnecessary to the disposition of this appeal, we note that defendant also relied on the statute of limitations defense in his oral motion for directed verdict:

"In the second place, we move for the dismissal of the plaintiff's cause because of the application of the six-year contract statute of limitations. The suit in this case was started in October, 1980, which brings us back six years to October, 1974. The promises and the breaches thereof had occurred prior to October, 1974, and plaintiff's cause is barred by the statute of limitations."

Under MCL 600.5807(8); MSA 27A.5807(8), the period of limitations is six years for an action to recover damages or sums due for a breach of contract. A cause of action accrues when a breach of contract occurs, namely, when the promisor fails to perform under the contract.[6] As the following excerpt from plaintiff's testimony on cross-examination evidences, plaintiff learned in 1972 that another GMC employee, Ray Newell, was promoted by defendant to general shift foreman, the position which plaintiff claimed that he was expressly and impliedly promised upon a vacancy therefor:

someone else's fraud. He has no right to act as one who understands what he is doing, unless he intends to lead those with whom he is dealing to believe that he understands the act done. In general it may be stated as a broad principle of universal application that if the means of knowledge are at hand and equally available to both parties while the subject matter of the release is open to the inspection of both, and there are no fiduciary or confidential relations nor any warranty of the facts, the injured party must show that he has exercised ordinary care and diligence to avail himself of the means of information existing at the time of the transaction, before he will be heard to say that he was ignorant of what he was doing, or deceived or misled by the representations of the other party." (Footnotes omitted.)

[6] *Jacobs v DAIIE*, 107 Mich App 424, 430; 309 NW2d 627 (1981), *lv den* 414 Mich 872 (1982); 1 Am Jur 2d, Actions, § 89, pp 618-619.

"*Q.* Wasn't it in about 1970 or '71 that Mr. Zajdlik first said to you that you would be the next person appointed general foreman in maintenance?

"*A.* That was the anticipation that he gave me, interpretation that he gave me.

"*Q.* That was 1970 or '71?

"*A.* I'd say before that, I'd say in 1969.

"*Q.* So, since even 1969 or at least up until 1970 you felt that the next person to be appointed as general foreman in maintenance would be you, is that right?

"*A.* That's right.

"*Q.* And this promise was made to you when there were only two general foremen in the maintenance department?

"*A.* That's right.

"*Q.* But the next person that was made general supervisor was Ray Newell?

"*A.* He was brought in from another shift, I mean another department.

"*Q.* And this is in 1972?

"*A.* That's right.

"*Q.* You're sure he was brought in from another department?

"*A.* That's right."

Plaintiff did not file his complaint for breach of contract until October 20, 1980. Consequently, had plaintiff been successful in proving that defendant breached the employment contract, the six-year statute of limitations would have limited him to a recovery of damages sustained on or after October 20, 1974.

Affirmed.