Mary Ann REID, Plaintiff,

v.

SEARS, ROEBUCK AND COMPANY, a New York Corporation, Defendant.

No. 82–40456.

United States District Court,
E.D. Michigan, S.D.

Feb. 21, 1984.

James A. Brescoll, Mount Clemens, Mich., for plaintiff.

Charles DeWitt, Jr., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

This wrongful termination suit arises out of defendant's severance from employment of plaintiff after almost seventeen years of service. Plaintiff filed a complaint alleging that (1) defendant breached the employment contract and (2) defendant was negligent in evaluating plaintiff's performance and in investigating the cause of her dismissal. Defendant's motion for summary judgment is before the Court.

The incidents leading up to plaintiff's dismissal commenced the evening of January 8, 1981. Plaintiff's son had borrowed the 1969 Plymouth belonging to plaintiff's mother. Having parked the car, plaintiff's son returned to find the battery stolen. He called his father, plaintiff's husband, for advice. Plaintiff's husband agreed to buy a battery to replace the one stolen from the Plymouth. The husband then went to defendant's Grosse Pointe store and, using his wife's 10% discount, purchased a new "Die Hard" battery. The sales receipt reflected that Rollie Reid had purchased the battery at an employee discount for a 1978 Dodge.

Plaintiff's mother later attempted to file an insurance claim for the stolen battery, but was instructed she could not do so without a receipt for purchase of the stolen battery and a receipt for the purchase of the replacement battery. Plaintiff offered

her assistance and, upon returning to work the next morning, inquired of Tom Dunaj, a non-supervisory employee in the automotive department, if he could make out two invoice receipts naming plaintiff's mother as purchaser and specifying her 1969 Plymouth to help with her mother's insurance claim. Dunaj complied with plaintiff's request and made out two receipts dated two months apart, but numbered consecutively. The receipt dated January 8, 1981 did not note a 10% employee discount.

A month later, defendant's Grosse Pointe store manager, Mr. Everest, was contacted by agents of plaintiff's mother's insurance company and asked whether it was possible for two invoices to be numbered consecutively, but dated two months apart. Mr. Everest then instituted an investigation which resulted in the firing of plaintiff and Dunaj for willful misconduct after each had admitted his role in the falsification of invoices.

■ It is indisputed that plaintiff's employment contract was indefinite as to duration. In Michigan, such contracts, without more, are construed as being terminable at will by either party. *Lynas v. Maxwell Farms*, 279 Mich. 684, 687, 273 N.W. 315 (1937). However, an employer's statements of policy can give rise to the legitimate expectation of an employee hired for an indefinite period that he will be dismissed only for good cause. *Toussaint v. Blue Cross*, 408 Mich. 579, 292 N.W.2d 880 (1980). Plaintiff relies on four "statements" by defendant which created her expectation that she would only be fired for good cause: (1) the employee handbook, "Getting Acquainted with Sears," (2) her store manager Mr. Harrington's oral promise of job security, (3) defendant's corrective interview policy, and (4) defendant's policy requiring approval by a territorial vice president prior to termination. Defendant, on the other hand, asserts that regardless of whether plaintiff subjectively relied on the above alleged policies, her reliance was not legitimate.

When plaintiff first became employed by defendant on May 5, 1964, she signed a declaration which said:

I certify that the information contained in this application is correct to the best of my knowledge. In consideration of my employment, I agree to conform to the rules and regulations of Sears, Roebuck and Co., and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no store manager or representative of Sears, Roebuck and Co., other than the president or vice president of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

■ Defendants assert and three judges in the Eastern District of Michigan have so held, that this language precludes good faith reliance on representations by those other than defendant's president or vice presidents that termination will be only for just cause. *See Summers v. Sears, Roebuck & Co.*, 549 F.Supp. 1157 (E.D.Mich., 1982) (*Freeman J.*); *Forrester v. Sears, Roebuck & Co.*, No. 81–73308 (E.D.Mich. Aug. 6, 1982) (Guy J.); *Novosel v. Sears, Roebuck & Co.*, 495 F.Supp. 344 (E.D. Mich., 1980) (Joiner, J.). Such a construction is not contrary to *Toussaint*, wherein the Michigan Supreme Court stated:

Employers are most assuredly free to enter employment contracts terminable at will without assigning cause. We would hold only that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect can give rise to rights enforceable in contract. 408 Mich. at 610, 292 N.W.2d 880,

and

Where the employer has not agreed to job security, it can protect itself by entering into a written contract which explicitly provides that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfac-

tory to the employer. 408 Mich. at 612, fn. 24, 292 N.W.2d 880.

On the other hand, this Court is not prepared to accept my brothers' position. While such language may well bar a *Toussaint* claim in some cases, it seems to me that an automatic barring application thereof is a negation of what this writer perceives to be the essential meaning of *Toussaint*—that there may be terms of the contract of employment implied in fact from the actions of the employer and its agents. The signing of an employment application as here, 17 years before the incident complained of and the automatic ignoring of any and all facts occurring thereafter as bearing on an employee's employer-induced expectation of some type of longevity in employment, seems a particularly unjust and unjustified interpretation of *Toussaint* which ought not to be automatically applied in this court without the Michigan court's authoritative ruling to that effect.

█ So this Court will now be directed to an evaluation of those matters plaintiff has alleged supporting her *Toussaint* claim to see if in fact they do support it and whether there is any genuine issue of fact with regard thereto. (*See* this Court's opinion in *Ariganello v. Scott Paper Co.*, 588 F.Supp. 484 (1982).)

Plaintiff's hypothesis that "Getting Acquainted with Sears" must have been authorized by a vice president is without basis and raises no genuine issue material fact. In response to plaintiff's interrogatory no. 221, defendant stated,

"Different people over the years have been responsible for working on ['Getting Acquainted with Sears'] and its revisions. No records are kept which indicate the identity of those individuals."

Defendant's Answers to plaintiff's Second Interrogatories to defendant, Aug. 29, 1983. The mere assertion by plaintiff that those individuals, on whom defendant has no information, must have been vice presidents or must have been directed by vice presidents will not raise an issue of fact sufficient to withstand a motion for summary judgment. *See* Fed.R.Civ.P. 56(e).

█ Plaintiff's reliance on Mr. Harrington's promise of job security is unfounded because Mr. Harrington was neither a president nor a vice president. Even if Mr. Harrington's assurance that

"[t]he job [as a teletype operator] is yours as long as you want it,"

plaintiff's Deposition at 96, gave rise to an expectation on plaintiff's part that she would remain a teletype operator as long as she wished, that expectation should have been effectively shattered when plaintiff's job was replaced by a computer and she was transferred to the cash office. Plaintiff herself stated in her deposition at pages 30–31,

"my job was terminated in the teletype and they told me either take the job in the cash office or there was nothing left for me, so I took it."

█ Plaintiff's reliance on defendant's alleged policy of giving corrective interviews was irrelevant because that policy did not apply in cases where termination was brought about by willful misconduct. (Quick Dep at 59–60.) For the same reason, her reliance on defendant's policy that termination of employees with more than ten years service must be approved by a territorial vice president was not justified. (Quick Dep at 31–32); *see also* defendant's supplemental brief in support of its motion for summary judgment at 19–20, citing policy which did apply in cases of willful misconduct. All that remains is plaintiff's subjective belief that she could be terminated only for just cause, but that belief alone created no enforceable contract rights. *Schwartz v. Michigan Sugar Co.*, 106 Mich.App. 471, 308 N.W.2d 459 (1981).

█ Plaintiff's attempt to create an issue of fact by alleging her dismissal for misconduct was but a pretext for furthering defendant's policy of replacing full-timers with less costly part-timers in violation of public policy is without basis. Her affidavit stating she *believed* she was fired in order to eliminate her full-time position is inappropriate in this motion for summary judgment. Fed.R.Civ.P. 56(e). Therefore,

defendant's motion for summary judgment as to the breach of contract claim must be granted. As a result, the Court need not address plaintiff's claim for emotional damages.

 Summary judgment must also be entered in favor of defendant on the negligence count. While it is plausible that a duty to evaluate may exist independent of an alleged employment contract, *see Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895 (1956); *Shipani v. Ford Motor Co.*, 102 Mich.App. 606, 302 N.W.2d 307 (1981), plaintiff has alleged not one fact which would lead this Court to find such a duty with respect to her employment with defendant.

For the reasons stated herein, defendant's motion for summary judgment is GRANTED, and this case is DISMISSED.

IT IS SO ORDERED.