**Spencer J. CARPENTER, Plaintiff,**

v.

**AMERICAN EXCELSIOR COMPANY, a foreign corporation, Defendant.**

No. 85–CV–40567–FL.

United States District Court, E.D. Michigan, S.D.

Jan. 8, 1987.

Max Dean, Flint, Mich., for plaintiff.

Russell J. Thomas, Jr., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Plaintiff brought this action in the Circuit Court for the County of Genesee, alleging that defendant wrongfully discharged him from its employ. Pursuant to 28 U.S.C. §§ 1332 and 1441(a), defendant removed the action based on diversity of citizenship. Plaintiff's contention of wrongful discharge is based on two theories. First, plaintiff claims that defendant breached an implied oral contract that he could be terminated only for just cause. Then, plaintiff alleges that his discharge resulted from age discrimination in violation of the Elliott-Larsen Civil Rights Act, MICH.COMP.LAWS ANN. §§ 37.2101, et seq. (West 1985). Defendant filed this Motion for Summary Judgment under Fed.R. Civ.P. 56, claiming that plaintiff's action can be decided on the evidence currently in the record, since there is no issue of material fact. Also pending is plaintiff's Motion to Compel answers to certain interrogatories. For the reasons set forth below, defendant's motion for summary judgment will be granted as to both counts, and plaintiff's motion to compel will be denied.

The pertinent facts of this case are as follows: On July 18, 1981 when plaintiff was 59, he was hired as a "floor covering specialist" for the Westland branch office of American Excelsior Company, where he was employed until June 15, 1984, when his employment was terminated. (Plaintiff's Dep. 34, 111).

Fred Kelly, one of defendant's customers, initially put plaintiff in contact with Loren Dahlberg, the manager of the Westland branch office. Mr. Kelly was aware that a major company for whom plaintiff sold carpeting had gone bankrupt. (Plaintiff's Dep. 9–12). Plaintiff interviewed

with Mr. Dahlberg on July 8, 1981, at which time plaintiff alleges that Mr. Dahlberg told him that he would be able to work for the company as long as he performed properly, and that his age was no barrier to his employment. (Plaintiff's Dep. 167, 234); *See also,* plaintiff's Affidavit in response to Defendant's Motion for Summary Judgment ¶ 2(j). Mr. Dahlberg offered the available position with the company to plaintiff during this interview, choosing plaintiff over forty other applicants who were not as experienced as plaintiff. (Plaintiff's Dep. 7, 26, 261). After these alleged representations by Mr. Dahlberg, he requested that plaintiff complete an employment application which expressly set forth the following acknowledgement:

> Further, I understand and agree that my employment is for no definite period and may regardless of the date of payment of my wages and salary be terminated at any time without any previous notice.

(Plaintiff's Employment Application p. 2, attached as Exhibit B to defendant's Motion for Summary Judgment). Plaintiff alleges that he and Mr. Dahlberg never discussed this provision. Further, plaintiff claims that he did not ever read the "fine print" containing this language, nor did he sign the application. (Plaintiff's Affidavit, ¶ 2(k)).[1]

In its motion, defendant contends that the general rule of law in Michigan is that employment for an indefinite time is terminable at the will of either party. *Lynas v. Maxwell Farms,* 279 Mich. 684, 687, 293 N.W. 315 (1937). The Michigan Supreme Court carved out a narrow exception to this rule, however, in the seminal decision of *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980). In *Toussaint,* the Court recognized that:

(1) A provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable although the contract is not for a definite term—the term is "indefinite," and

(2) such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements.

*Id.* at 598, 292 N.W.2d 880.

In order to defeat defendant's motion for summary judgment, plaintiff must show that more than a mere subjective expectancy existed that he would be terminated only for just cause. *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir.1986). While this subjective expectancy of continued employment standing alone is an insufficient basis for a *Toussaint* claim, *Schwartz v. Michigan Sugar Company,* 106 Mich.App. 471, 308 N.W.2d 459, 462, *appeal denied,* 414 Mich. 870 (1982), it is a prerequisite for establishing that an implied contract arose for just cause termination. *Longley v. Blue Cross & Blue Shield of Michigan,* 136 Mich.App. 336, 356 N.W.2d 20 (1984).

In *Reid,* the Sixth Circuit examined three cases consolidated on appeal, that originated in the Eastern District of Michigan.[2] All three suits were brought against Sears. Sears successfully argued for summary judgment in the district court by relying on language found in the employment applications which acknowledged that employment was terminable at will.[3] This provision in the application was found to be outside the coverage of the *Toussaint* exception, as indicated by that court when it wrote:

---

**1.** Defendant claims, in the alternative, that assuming arguendo an implied contract to be discharged only for just cause, plaintiff in fact did not meet his sales quotas in 1984, nor did he make the expected number of sales calls per day. Therefore, just cause existed.

**2.** The named case was before this writer. *Reid v. Sears, Roebuck & Co.,* 588 F.Supp. 558. (E.D. Mich.1984), *aff'd* 790 F.2d 453 (6th Cir.1980).

**3.** This language was as follows:

> In consideration of my employment, I agree to conform to the rules and regulations of Sears Roebuck and Co., and my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or myself.

*Reid,* 790 F.2d at 456.

Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We hold only that an employer's express agreement to terminate only for cause or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract.

*Reid,* 790 F.2d at 455, quoting *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 610; 292 N.W.2d 880 (1980). *Accord, Valentine v. General American Credit, Inc.,* 420 Mich. 256, 258–259, 362 N.W.2d 628 (1984) ("[a]bsent a contractual provision for job security, either the employer or the employee may ordinarily terminate an employment contract at any time for any, or no, reason"). The *Reid* court found that all three plaintiffs were bound by the language contained in their employment applications, and that they did not create an issue of fact by relying on Sears' Employee handbook to show that they indeed should be terminated only for just cause.[4] The court readily distinguished *Toussaint,* in which case the employer provided literature containing language that promised "to treat employees leaving Blue Cross in a fair and consistent manner and to release employees for just cause only."[5] *Toussaint,* 408 Mich. at 617, 292 N.W.2d 880, *quoted in Reid,* 790 F.2d at 460.

Here, plaintiff contends that there is a genuine issue of fact as to whether an implied contract for just cause employment arises, based on Mr. Dahlberg's statement that he would be employed as long as he performed properly. Plaintiff also argues that he is not bound by the language contained in the employment application because he neither discussed it with Mr. Dahlberg, nor did he notice the fine print on the employment application. (Plaintiff's Aff. ¶ 2(k)).

■ As to plaintiff's first contention, it does not appear that plaintiff has shown more than a "mere subjective expectancy" that he would only be terminated for just cause.[6] Although plaintiff has stated that Mr. Dahlberg, at their initial interview, assured him of continued employment, (Plaintiff's Aff. ¶ 2(j)), nevertheless, plaintiff, according to defendant, then indicated his willingness to agree to "terminable at will" employment subsequent to this assurance when he filled out his employment application. *Id.* ¶ 2(k). This employment application simply is irrelevant if no durational basis is initially established by plaintiff. Further, plaintiff has not provided any other evidence such as employee handbooks, policy statements or other literature to buttress his argument that an implied contract arose for just cause termination. There-

4. This handbook outlined the conduct for which an employee could be terminated. The employees argued that this led them to believe that these were the sole grounds for termination.

5. The court also distinguished the situation in *Schipani v. Ford Motor Co.,* 102 Mich.App. 606, 302 N.W.2d 307 (1981), where the employee made a substantial case to defeat Ford's "terminable at will" language, by pointing to Ford's literature, practice and policy, which all strongly indicated a contrary posture.

6. Since *Toussaint,* the Court has been faced with a number of cases where the plaintiff has claimed a *Toussaint* contractual obligation arising out of the employer's hiring agent telling plaintiff at the time of employment that plaintiff could be employed "as long as he did the job" or similar expressions such as "as long as there is work to do," "as long as your work is satisfactory," "as long as you want," etc. When you examine these statements, each, standing alone, simply does not constitute a contract or agreement with any specific duration. Each was

clearly within the policy of the *Lynas* case where an employment agreement for an indefinite term such as each of these was held to be an employment at will. After all *Lynas* as well as reality compels recognition of the fact that neither party to the beginning of an employment relationship expects it to be unsatisfactory, and both hope it will have a significant duration. This hope and noncontractual wish is expressed in terms of language such as "as long as you do the job." Hence, the *Toussaint* exception to *Lynas* must mean more than merely this language. While it is true that as the economy and society change, we can expect employment durational rules will be altered. That was probably the basis for the specific recognition in *Toussaint* that the employer will be held accountable for allowing a hiree to *reasonably* believe that there was a *specific* durational term to the employment; but it must be based on more than the expression of an optimistic hope of a long relationship.

fore, plaintiff was not reasonable in his subjective assumption that he could not be terminated except for just cause.

■ Plaintiff's second contention that he is not bound by the language of the application must also fail for two reasons: first, the Michigan Supreme Court has stated that the failure to read or understand an agreement is not cause for avoiding the same. *See Sponseller v. Kimball*, 246 Mich. 255, 260, 224 N.W. 359 (1929); *accord, Vandendries v. General Motors Corporation*, 130 Mich.App. 195, 343 N.W.2d 4 (1983). Plaintiff was probably asked to complete the employment application for a purpose; to memorialize the most significant term of the employment—that is, that he was subject to termination at will. Therefore, he should be bound by that concession, and his count for breach of contract should be dismissed. But secondly and more importantly, as noted before, he has not established any basis for a specific durational contract.

The second count of plaintiff's complaint charges that defendant's discharge of plaintiff was an act of age discrimination. The pertinent statute reads as follows:

Section 202. (1) An employer shall not: (a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including a benefit plan or system.

Specifically, plaintiff claims that defendant deprived him of "sales training, information, pricing, and samples of other products sold by the company seriously compromising his ability to reach a high sales volume including a repeated refusal to send him to the company's school in Arlington, Texas." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment p. 2). In his deposition, plaintiff stated that evidence of defendant's disposition against older employees could also be found in several statements made by Mr. Dahlberg. Plaintiff contends that on several occasions, he overheard Mr. Dahlberg state that he liked his salesmen "young, lean and mean." (Plaintiff's Dep. at 258–59). Then, plaintiff claims that in a casual conversation with Dahlberg where plaintiff remarked that "he wished he were younger, because he was not feeling well," Dahlberg responded that it was probably because "he was not as young as he used to be." (Plaintiff's Dep. at 253–55).

In *Grubb v. W.A. Foote Memorial Hospital*, 741 F.2d 1486, 1498 (6th Cir.1984), the Court of Appeals recognized that a plaintiff must present a prima facie case of unlawful discrimination in order to support a claim under the Elliott-Larsen Act, citing *Gallaway v. Chrysler Corp.*, 105 Mich. App. 1, 5, 306 N.W.2d 368, 370–71 (1981). Plaintiff can make a prima facie case for age discrimination by a showing of either disparate treatment or intentional discrimination. *Schipani, supra*, 102 Mich.App. at 617, 302 N.W.2d 307.

■ To establish disparate treatment, plaintiff must show that he was treated differently than younger employees. Cf. *Pompey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971), cited in *Schipani*, 102 Mich.App. at 617, 302 N.W.2d 307. Plaintiff has not offered any direct, credible, evidence to support a finding of disparate treatment. To the contrary, plaintiff stated that "[t]here was quite a parade" of salesmen through the Westland sales office during the period of his employment. (Plaintiff's Dep. at 242).

Plaintiff also remarked that of all the salesmen, he was the person who was employed in the Michigan region for the longest period of time. (Plaintiff's Aff. ¶ 8). Plaintiff further recalled that "[t]here were two fellas ... both let go, but I don't recall what for ... [they were] I'd say [in their] early thirties." (Plaintiff's Dep. at 240).

Similarly, plaintiff fails to offer sufficient evidence to show intentional discrimination. Plaintiff admitted that no one ever told him that he was being fired because of his age. (Plaintiff's Dep. at 264–65). Plaintiff bases his entire claim of age discrimination on the company's refusal to send him to training school and the two statements made by Loren Dahlberg. Plaintiff claims that Dahlberg told him that since he was not of a promotable age, he would not be sent to the school in Arlington, Texas for product training. (Plaintiff's Dep. at 137). Defendant counters that the referenced school is generally for sales training of young, inexperienced sales personnel and that the majority of the training consisted of sales techniques, rather than product line information. (Defendant's Answers to Plaintiff's First Set of Interrogatories No. 12). This is uncontroverted by the plaintiff. Defendant's contention is also buttressed by plaintiff's admission that he knew of no experienced sales people who attended the school.

Next, plaintiff argues that evidence of intentional discrimination could be found in Mr. Dahlberg's statement that he liked his salespeople "young, mean and lean." (Plaintiff's Dep. at 258). Plaintiff stated that Dahlberg made this statement to a table of people at a Christmas party. Plaintiff also stated in connection with this statement, however, that Dahlberg probably meant that he "wanted people who could go out and charge hard." (Plaintiff's Dep. at 261). The effect of this statement, which is extremely weak, if any evidence at all, of intentional discrimination, is undercut further by the fact that when Mr. Dahlberg hired him, plaintiff was 59 years old and that plaintiff remained in the Michigan region longer than any other salesperson.

Finally, plaintiff points to Mr. Dahlberg's statement that plaintiff was not as young as he used to be. Plaintiff admits, however, that this statement was made during a casual conversation, it was not made in connection with his performance and it was in response to a comment made by plaintiff that he wished he were younger because he was not feeling well. (Plaintiff's Dep. 253–55). Considering the surrounding circumstances, this statement by Mr. Dahlberg seems to be more of a cliche than a discriminatory slur.

Viewed individually or as a whole, these statements do not give rise to an inference of intentional discrimination as a matter of law, and hence plaintiff has failed to make a prima facie showing of age-based discrimination; thus, summary judgment is proper as to Count II of the complaint.

■ Plaintiff moved to compel the answers to interrogatories number 8, 18, 20, 28 and 29, to which defendant had objected as being overbroad and burdensome. Plaintiff's interrogatory number eight was contingent upon an affirmative response to the previous interrogatory. Since defendant responded negatively to the previous interrogatory, it was proper not to respond to number eight. Further, plaintiff made an identical inquiry in its second set of interrogatories, number 31, without the condition of an affirmative response. Defendant responded to this interrogatory (number 31), on July 3, 1986.

Defendant also submitted supplemental responses to the other four interrogatories that plaintiff sought to have answered. These responses provided plaintiff with data that would permit evaluation of plaintiff's age discrimination claim on a regional level. In the previous discussion of plaintiff's discrimination claim, it was noted that plaintiff based his entire discrimination claim on defendant's promise to send him to the company school in Arlington and the two statements made by Mr. Dahlberg. Further, plaintiff had before him the supplemental responses the defendant had submitted. Thus, it is reasonable to conclude that plaintiff had sufficient informa-

tion with which he could defend defendant's summary judgment motion and this appeared to be plaintiff's position at the argument on the motion.

For the foregoing reasons, defendant's Motion for Summary Judgment is hereby GRANTED on both Counts, and plaintiff's Motion to Compel Answers to Certain Interrogatories is hereby DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED.