Beverly A. and Samuel D.
BAUGHEY, Plaintiffs,

v.

TECUMSEH COUNTRY CLUB, INC. and
Tecumseh Products Company,
Defendants.

Civ. A. No. 90–73046.

United States District Court,
E.D. Michigan, S.D.

Nov. 18, 1991.

Thomas Blaske, Blaske & Blaske, P.C., Ann Arbor, Mich., E. Robert Blaske, Blaske & Blaske, P.C., Battle Creek, Mich., Anne L. Heyns, Anne E. Campau, Best, Heyns & Klaeren, P.C., Jackson, Mich., for plaintiffs.

John C. O'Meara, Michael A. Alaimo, Dickinson, Wright, Moon, Van Dusen and Freeman, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Defendants filed the instant motion for summary judgment August 16, 1991; plaintiffs filed a response September 3, 1991; and defendants filed a reply September 12, 1991. Oral argument was heard November 14, 1991.

### BACKGROUND FACTS

Plaintiffs Samuel and Beverly Baughey, husband and wife, were discharged from their respective positions as assistant manager and general manager of the Tecumseh Country Club ("TCC") on July 11, 1989. Plaintiffs had worked for TCC from approximately August 1977 to January 1979. Beverly Baughey was re-hired on an interim basis in August 1981 but submitted her resignation September 28, 1982. Ultimately, however, she continued as general manager. Plaintiffs went to and left TCC as a team. As part of her duties, Beverly Baughey prepared an employees' manual in the early 1980's.

Defendant Tecumseh Products Company ("TPC") entered into a financial assistance agreement with TCC in 1982, whereby TPC was to provide financial assistance to TCC without interest and without requirement of repayment unless TCC was sold. The original two-year agreement was extended several times and was in effect at the time of plaintiffs' termination.

Plaintiff Beverly Baughey was injured at TCC May 24, 1989. She was then unable to perform some of her duties at TCC but did continue to perform many of her supervisory responsibilities.

During their employment plaintiffs received regular raises. Although Beverly Baughey did not receive any regular job evaluations, Kenneth Herrick "would informally tell her that she was doing a good job."[1] Plaintiffs' Resp.Br. at 3. No disciplinary proceedings were initiated against plaintiffs at any time.

Shortly after May 21, 1989, members of the TCC board of directors received a copy of a letter from "many more than 27" members of the TCC. Defendants' Br.Ex. G. The letter, referring to plaintiff Beverly Baughey, stated

She has served our Club well in her needed time but she is not needed now and should be retired gracefully and promptly. It is not a disgrace to put an old horse to pasture without fanfare.... Beverly has not been overly visible and a GENTLE*MAN* would be a welcomed breath of fresh air. We need and want a man.

Defendants' Br.Ex. G (emphasis in original). On July 11, 1989, plaintiffs were terminated. Plaintiffs have sued for wrongful discharge, tortious interference with contractual relations, and sex and age discrimination.

### STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would neces-

---

**1.** Herrick was the chairman of the board of directors of TPC and a member, though not a board member, of TCC.

sarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." [Citation omitted]. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *see Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. In-*

*dus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## ANALYSIS

### I. WRONGFUL DISCHARGE

■ There is no dispute that plaintiffs' employment was for an indefinite duration. In Michigan it is well established that unless otherwise provided, employment of indefinite duration is presumed to be terminable at the will of either the employer or the employee. *Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 292 N.W.2d 880 (1980); *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315 (1937). Discharge only "for cause" may become part of the employment contract by express agreement or "as a result of an employee's legitimate expectations grounded in an employer's policy statements." *Toussaint*, 409 Mich. at 598, 292 N.W.2d 880.

### A. ORAL REPRESENTATIONS

■ Plaintiffs contend that, based on the oral representations made to them by Kenneth Herrick, they had an employment contract that provided termination only for cause. The Michigan Supreme Court recently addressed the issue of oral representations giving rise to contractual expectations. In *Rowe v. Montgomery Ward*, 437 Mich. 627, 640, 473 N.W.2d 268 (1991), the court stated

> The starting point in analyzing oral statements for contractual implications is to determine the meaning that reasonable persons might have attached to the language, given the circumstances presented.

The court quoted with approval the following language from the federal district

court opinion in *Carpenter v. American Excelsior Co.*, 650 F.Supp. 933, 935 n. 6 (E.D.Mich.1987):

> After all, *Lynas* as well as reality compels recognition of the fact that neither party to the bargaining of an employment relationship expects it to be unsatisfactory, and both hope it will have a significant duration. This hope and non-contractual wish is expressed in terms of language such as 'as long as you do the job.'

*Rowe*, 437 Mich. at 640, 473 N.W.2d 268. The court then agreed with the *Carpenter* decision that "any orally grounded contractual obligation for permanent employment 'must be based on *more than* an expression of an optimistic hope of a long relationship.'" *Id.* (quoting *Carpenter*, 650 F.Supp. at 935 n. 6) (emphasis supplied by Michigan Supreme Court). The court added, "To be sure, because of the difficulty in verifying oral promises, the statements must clearly permit a construction which supports the asserted meaning." *Id.* 437 Mich. at 641, 473 N.W.2d 268.

Plaintiff Beverly gave the following deposition testimony regarding the oral statements Kenneth Herrick made to her before and during her employment:

> A: He made it then. Even prior to that, when I was at Lenawee and I asked to come to Tecumseh Country Club, he said, "If you will go over to my club, you won't have a thing to worry about."
>
> Q: Did that mean to you that you would have a job until you wanted to retire?
>
> A: Yes, that's what it meant to me.
>
> Q: Did he ever say that, those words?
>
> A: He told me I would have a job as long as I wanted it.

B. Baughey Dep. at 47–48.

> Q: You apparently were willing to leave in September of 1982 despite the fact that you had been given, in 1981 when he invited you back, the assurances to the effect that you worry too much, you don't have to worry about retirement, I will see to that.
>
> A: That's right. And again, you see, he left the decision if I left up to me. But he was going to try to do all he could to make the situation so that I would continue on, which is what he did.

*Id.* at 96.

> Q: Well, I am just trying to pin these down a little bit. I understand what you said is before you went back to the club in 1981, when you and Mr. Herrick talked about the fact that Mr. Foss and you were going to talk about your going back to the club, that he said to you, If you take the job, you won't have a thing to worry about. Is that your testimony?
>
> A: Yes. He told me that and he also told me that he would help all he could.

*Id.* at 46.

> Q: You also—your complaint also alleges that Mr. Herrick said to both of you words to the following effect, which these following words appear in quotes. "You worry too much. You don't have to worry about retirement, I will see to that." Did Mr. Herrick say something like that to you?
>
> A: He certainly did.
>
> Q: Can you remember any specific occasion when he said something like that to you?
>
> A: I can remember one time in particular. It was in my office and a member had made some critical comments, I guess you would say. And he told me, he said Worry, worry, worry, that's all you do. You don't have to worry about things like that. Quit worrying.

*Id.* at 52. Plaintiff Samuel Baughey also recalled the following promises made by Herrick:

> Q: Now you said that Mr. Herrick promised you either a job and/or retirement, and I know we've talked about the job aspect before, but I'm not so clear on this retirement idea. In what way did he promise you retirement?
>
> A: Well, he said we didn't have to worry about a job or anything like that, and it comes—I think on one of the tapes he refers to that; he says in essence Ken will take care of it.
>
> Q: In response to—I don't understand.
>
> A: In response to work, in response to worrying about retirement, Ken will take

**358**

care of that. I think he says me and my company or something like that, I'm not sure exactly.

S. Baughey Dep. at 544.

The court finds that these allegations, viewed in a light most favorable to plaintiffs, reveal only an expression of an optimistic hope of a long relationship. The above statements by Herrick emphasize that plaintiffs' employment contract was for an indefinite duration. The law in Michigan is well-established that such contracts are presumed to be terminable at will. Plaintiffs have presented no statements by Herrick or anyone else that plaintiffs would be discharged only for cause.

## B. WRITTEN POLICIES

[5] Plaintiffs contend that the employees' manual, which includes job descriptions, work rules, a stepped disciplinary process pertaining to work violations and other policies, does not contain any reservation of the right to terminate at will. Plaintiffs rely on two cases which have held that the existence of a just cause employment contract is a question for the jury when the employer establishes written disciplinary rules, discharge procedures and a grievance process but does not retain the right to terminate at will. *Renny v. Port Huron Hosp.*, 427 Mich. 415, 398 N.W.2d 327 (1986); *Ross v. State Farm Ins. Co.*, 676 F.Supp. 781 (E.D.Mich.1987).

In the instant case, however, the employer did retain the right to terminate at will. The following language is found in the Employee's Manual:

Violations by an employee of the following work rules will be considered sufficient grounds for disciplinary action, ranging from a reprimand or suspension to termination of employment, depending upon the seriousness and frequency of the offense *in the judgment of the Management.*

\* \* \* \* \* \*

Depending on the seriousness and frequency of the violation(s), management may select termination over the first and second step i[f] this is, *in management's*

*judgment,* to be in the best interest of the Club.

Defendants' Br. Ex. F at 5, 28 (emphasis added).

Plaintiff Sam Baughey conceded that the manual gave management the discretion to determine appropriate discipline. S. Baughey Dep. at 493, 496–97. Indeed, Plaintiff Beverly Baughey testified that, pursuant to the manual, she had terminated two employees without any progressive discipline "because of the circumstances involved." B. Baughey Dep. at 118. Accordingly, there is no basis for an implied contract to be discharged only for cause. *See Iman v. Metropolitan Life Ins. Co.*, No. 87–74000, slip op. at 5–7 (E.D.Mich.1988) (held that handbook which instructed employees to meet satisfactory standards of performance and advised supervisors not to terminate without prior warnings does not give rise to a for-cause contract where it also provides that "deviations from these procedures are appropriate should management determine").

The court concludes that there is no genuine issue of material fact regarding plaintiffs' employment contract with defendants. The contract was one of indefinite duration. Under Michigan law such a contract is presumed to be at will. Plaintiffs have failed to present any evidence from which a reasonable person could determine that plaintiffs had legitimate expectations grounded in defendants' policy statements that plaintiffs could be discharged only for cause.

## II. TORTIOUS INTERFERENCE OF CONTRACTUAL RELATIONS

Plaintiffs claim that TPC, through its agents and officers, interfered with and caused the termination of their employment contract with TCC. In order to prevail on this claim, plaintiffs must demonstrate (a) the existence of the contract, (b) breach of the contract, and (c) instigation of the breach, without justification, by the alleged tortfeasor. *Briggs v. General Motors Corp.*, 754 F.Supp. 107, 110 (W.D.Mich. 1990). Because the court has already found that the employment contract was at

will and could be terminated by either party at any time and for any reason, plaintiffs cannot demonstrate a breach of contract by defendants. Therefore, defendants are entitled to summary judgment on plaintiff's tortious interference claim.

## III. AGE AND SEX DISCRIMINATION

■ Plaintiffs claim that defendants terminated Beverly Baughey because of her age and sex in violation of Michigan's Elliott–Larsen Civil Rights Act, Mich.Comp. Laws § 37.2101 *et seq.*, and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Under both Michigan and federal law, the court may grant summary judgment in discrimination claims if plaintiffs fail to support them by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

In both sex and age discrimination cases, a plaintiff/employee must first establish a *prima facie* case of discrimination. The burden then shifts to the defendant/employer to articulate a legitimate, nondiscriminatory reason for its action. In order to prevail, the plaintiff/employee must further establish that the proffered reason was merely a pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Where a plaintiff fails to do either by a preponderance of the evidence, the defendant is entitled to summary judgment. *Burdine*, 450 U.S. at 252–254, 101 S.Ct. at 1093–94. Furthermore, "mere beliefs, conjecture and speculation are insufficient to support an inference of ... discrimination." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir.1986).

In order to establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate, as a threshold matter, that he or she was qualified for that position. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir.1982). In the instant case plaintiff Beverly Baughey cannot establish a *prima facie* case because she has admitted that, due to an injury on the job prior to her termination, she was unable to perform all of her duties

at TCC. Plaintiff made the following statements at her deposition:

Q: Are you on medication right now?

A: When I can't stand the pain anymore, yeah.

Q: Would you be able to perform the duties of the general manager of the Tecumseh Country Club in your present conditions?

A: No, I wouldn't.

Q: Would your answer be the same for the entire period of time since July 11th, 1989, that you would not be able during any part of that time, you would not have been able to perform you duties as general manager?

A: My personal feeling is that I wouldn't.

B. Baughey Dep. at 24–25. In view of these admissions, plaintiff is precluded from establishing that she was qualified for the position of general manager on the date of her discharge. *Jenks v. Mountain States T & T Co.*, 53 Fair Empl.Prac.Cas. 1708, 1714, 1989 WL 226145 (D.Utah 1989).

If the court were to assume that plaintiff Beverly Baughey has established a *prima facie* case, plaintiff would be unable to show that defendants' nondiscriminary rationale for termination was mere pretext. It is defendants' position that the board of directors discharged plaintiff because she could not adequately perform her duties. Defendants' Br. at 18.

■ Plaintiff relies on the anonymously authored letter of May 21, 1989, to establish her employment discrimination claims. However, the remarks therein cannot be attributed to defendant TCC merely because the board members read it. "A court or a jury cannot attribute the discriminatory remarks of others to officials who made the decision to discharge and employee unless it is clear that the remarks emanate from that source and therefore impliedly were factors in the discharge decision." *Norris v. Baxter Healthcare*, 47 Fair Empl.Prac.Cas. 968, 970, 1988 WL 84735 (N.D.Ill.1988). Plaintiff has failed to present any evidence to establish that the remarks made in the letter emanated from anyone on the board of directors. There-

fore, defendants are entitled to summary judgment on plaintiff Beverly Baughey's sex and age discrimination claims.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendants' motion for summary judgment is GRANTED.