**Donald E. BAILEY, Plaintiff,**

v.

**DOVER ELEVATOR COMPANY, Defendant.**

Civ. No. 92CV73663DT.

United States District Court,
E.D. Michigan, S.D.

March 29, 1993.

Edward Young.

Robert Bogdan.

Robert Finkel.

James Tucker.

ORDER

DeMASCIO, District Judge.

Prior to April 10, 1992, plaintiff Donald E. Bailey was employed by defendant Dover Elevator Company. At the time of his resignation, he was defendant's district manager in Detroit. As an employee, he had never received an employee handbook or personnel manual. He administered the provisions of the Dover Field Operating Manual, which does not state that employees will be discharged only for cause. He claims that his understanding of defendant's policy, which he administered, was that employees were only to be discharged for cause, usually after going through a course of progressive discipline.[1] He states that his supervisors indicated, in performance reviews, that he could expect to remain with and advance in the company so long as he performed well. Other managers also expressed this view. In a discussion about his future plans, plaintiff told John Apple, the former President of Dover Elevator Company, that he wanted to advance to Apple's position. Apple's reply was that "so long as [Bailey] did [his] job well, [he] could enjoy continued employment with Dover Elevator Company and could very possibly become president." Further, plaintiff points out defendant's policy of taking pride in long-term employees, even instituting a "25 year club" for such employees.

In a hand-written letter of resignation, plaintiff cites personal reasons as the cause of his resignation. In fact, he alleges, he resigned under pressure from defendant's management. That pressure came about after plaintiff ordered a tank of nitrous oxide from one of defendant's suppliers. Plaintiff contends that he paid for the nitrous oxide, following defendant's policy that allowed employees to order supplies to be used and paid for by themselves. Plaintiff had purchased the nitrous oxide for personal off-duty use as a recreational drug. Nitrous oxide, commonly called laughing gas, is not listed as a controlled substance or illegal drug by any federal or state statute or regulation. Plaintiff testified that he noticed this drug on sale

---

1. On this point, plaintiff's statements have been contradictory. He admitted knowing of at least one incident of immediate discharge, but none-theless has submitted an affidavit stating that he knows of no such instance.

in "party stores." Defendant contends that it forced plaintiff's resignation because of its concern that he violated its drug policy.

Although plaintiff's complaint alleges that an oral contract provides that he would only be terminated for cause, he does not dispute that his employment was for an indefinite period of time with no written contract. Instead, he now argues that he has raised a jury question as to the existence of an implied-in-fact contract not to be discharged without just cause.

■ The Michigan Supreme Court recently discussed implied-in-fact contracts of the kind urged by plaintiff. *Rowe v. Montgomery Ward,* 437 Mich. 627, 473 N.W.2d 268 (1991). In *Rowe,* the court recognized that "the theory remains troubling because of those instances in which application of contract law is a transparent invitation to the factfinder to decide not what the "contract" was, but what "fairness" requires. *Id.* at 631, 473 N.W.2d 268 (emphasis in original). The court was specifically troubled that words that as a matter of law, "any orally grounded contractual obligation for permanent employment 'must be based on more than an expression of an optimistic hope of a long relationship.'" *Id.* at 640, 473 N.W.2d 268 (quoting *Carpenter v. American Excelsior Co.,* 650 F.Supp. 933 (E.D.Mich.1987) (emphasis added in *Rowe* ).

Such additional information would be supplied by the parties' "visible acts." *Id.* Thus, in *Rowe* the court discussed the factors that could support the conclusion that such a contract existed when combined with such words as "you will be employed as long as you do your job." For example, in *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), both of the plaintiffs had been given such assurances after specifically asking about job security in the context of individualized negotiations over employment. No such additional elements were present in *Rowe,* who had not been engaged in prolonged employment negotiations, and who had not specifically raised the issue of job security with her potential employer. Further, the court noted that it had recently held that "[an] employer may, without an express reservation of the right to do so, unilaterally change its written policy from one of discharge for cause to one of termination at will, provided that the employer gives affected employees reasonable notice of the policy change." *Id.* 437 Mich. at 648, 473 N.W.2d 268 (quoting *In re Certified Question; Bankey v. Storer Broadcasting Co.,* 432 Mich. 438, 441, 443 N.W.2d 112 (1989)). The court, therefore, noted that "[w]hatever the nature of plaintiff's expectations with regard to termination prior to the issuance of [a manual expressly stating that she could be discharged at any time for any reason] we find that [that] manual clearly and unambiguously notified plaintiff of the company's termination-at-will policy." *Id.* 437 Mich. at 650, 473 N.W.2d 268. These subsequent acts belied Rowe's contention that at the time of her termination she was not an at-will employee.

■ The statements and the overall company attitude alleged by plaintiff are the kind of simple expressions of optimism discussed in *Rowe.* In particular, Apple's statement, as relayed by plaintiff, is that "so long as [Bailey] did [his] job well, [he] *could* enjoy continued employment with Dover Elevator Company" (emphasis added). This alleged statement was made after plaintiff was hired by defendant, as were the other statements plaintiff alleges, all of which would go to show the existence of a general company policy expressed to plaintiff rather than any contract to be applied solely to plaintiff.

■ Similarly, the institution of the "25 year club" could not fairly be taken as anything more than an expression of good will toward the members of the club and an encouragement to others to aspire to membership in the club.

■ Further, as a matter of policy aimed to provide a better working relationship with its employees, a company may apply a progressive disciplinary scheme, as Montgomery Ward did in *Rowe,* without wishing to legally bind itself to that scheme. Thus, the Michigan Supreme Court stated in *In re Certified Question,* that a policy "is commonly understood to be a flexible framework for operational guidance, not a perpetually binding contractual obligation." 432 Mich. at 456,

443 N.W.2d 112. Defendant did not distribute a booklet describing its scheme to plaintiff as an employee, instead it instructed him, as a manager, to use the scheme. This distinction is important, as the policy was thus clearly directed to the decision makers and was not held out to the employees as a term of their contracts.

Accordingly, the defendant's motion for summary judgment will be granted.

IT IS SO ORDERED.