**Brenda REEVES, Plaintiff,**

v.

**DIGITAL EQUIPMENT CORPORATION, Defendant.**

No. C86–3304.

United States District Court, N.D. Ohio, E.D.

Jan. 19, 1989.

**676**

Alan Belkin, Shapiro, Turoff, Gisser & Belkin, Cleveland, Ohio, for plaintiff.

Frank C. Morris, Jr., Epstein Becker Borsody & Green, Washington, D.C., Linda Hauserman Harrold, Hahn Loeser & Parks, Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, Chief Judge.

Plaintiff filed this lawsuit under 42 U.S.C. § 1981 and 42 U.S.C. § 2000 e–5(b) alleging that certain decisions made by her employer were racially motivated and retaliatory. In particular, Plaintiff claims that she was treated differently from whites in disciplinary matters, in her daily workload and in her eventual termination. Defendant, Digital Equipment Corp. has moved for summary judgment on all of Plaintiff's claims.

### 1. Plaintiff's Discipline and Workload

In order for Plaintiff to prove a *prima facie* case of discrimination she must demonstrate that: (1) she was a member of a racial minority; (2) she and a similarly situated white employee received dissimilar treatment; and, (3) sufficient evidence exists from which the court can find a causal connection between race and the alleged acts of Defendant. *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986). Defendant asserts that Plaintiff can not prove the second prong of the above test, namely, that Plaintiff was treated differently from similarly situated whites.

Plaintiff was involved in a series of disciplinary actions which ended in her termination. Plaintiff was put into the "problem solving" category of discipline when she was tardy and received low performance ratings. Two white employees and one black employee were also put into "problem solving" for the same reasons. Plaintiff was then counseled for insubordination, yet two white employees were also counseled for the same reason. Because Plaintiff's job performance continued to be unacceptable she received verbal and written warnings and was ultimately terminated. Those further disciplinary actions are the basis for Plaintiff's claim of disparate treatment.

■ If other white employees had demonstrated performance problems even after the counseling stage, but were not disciplined as severely as Plaintiff, she could show disparate treatment. However, nowhere does Plaintiff maintain that other white employees continued to have problems after "problem solving" and counseling. Therefore, as to her verbal warning, written warning, and discharge, Plaintiff was not similarly situated with regard to her white counterparts. She has not presented a *prima facie* case of racial discrimination regarding her discipline.

■ Plaintiff further claims that she was delegated a significantly more burdensome workload than some of her white counterparts. That decision is claimed to be racially motivated. As noted in *Cooper*, 795 F.2d 1265, 1270, Title VII "generally prohibits race ... discrimination in any employment decision." A claim regarding excessive workload was addressed in *Sherrill v. J.P. Stevens and Co., Inc.*, 410 F.Supp. 770 (1975), in which the court stated:

> [t]he additional duties imposed on warehouse employees, the black department, were onerous and discriminatory. Employees in other departments, clearly identifiable as white, were not required to perform two or more jobs. The discharge of plaintiff Costner and Albert McDowell on July 29, 1974, because they objected to the discriminatory practices ... constitutes a violation of Sections 703(a) and 704(a) of Title VII.... (citations omitted).

*Id.* at 784–85 Thus, if a delegation of burdensome assignments is racially motivated, Title VII clearly provides relief.

Defendant disputes, of course, the quantity of work assigned to Plaintiff, stating that "it fell within her assigned duties." Manifestly, there is an issue of material

fact as to the amount of work delegated to Plaintiff, and whether it was racially motivated. Therefore, pursuant to Rule 56(c) Fed.R.Civ.P. Defendant's Motion must be denied to the extent that Plaintiff alleges discrimination in the assignment of her daily duties.

### 2. Plaintiff's Claim of Retaliation

Plaintiff also claims that her disciplinary proceedings and discharge were in retaliation for certain EEOC claims which she filed. Plaintiff had filed a total of four EEOC claims, in June 1985, October 1985, January 1986 and March 1986. To prove a *prima facie* case of retaliation, Plaintiff must show, *inter alia,* a retaliatory motive or that the timing of Defendant's actions was such as to allow an inference of retaliation to arise. *Sutton v. National Distillers Products Co.,* 445 F.Supp. 1319 (S.D. Ohio 1978) *aff'd,* 628 F.2d 936 (6th Cir. 1980).

Plaintiff's supervisor, Susan Ahlgren, was solely responsible for three acts which are claimed to be retaliatory: placing Plaintiff into "problem solving", counseling her for insubordination, and assigning her workload. Ms. Ahlgren also took part in three joint actions taken against Plaintiff: the verbal warning, the written warning, and the termination. According to Ms. Ahlgren's sworn statement, undisputed by Plaintiff, she "was totally unaware that Brenda Reeves [Plaintiff] had filed discrimination charges with the EEOC until mid or late January." The three employment decisions which Ms. Ahlgren made on her own were all consummated before she even learned of the EEOC filings. Therefore, she could have had no retaliatory motive for making such judgments.

The verbal warning was issued to Plaintiff on January 6, 1986 after a conference among Susan Ahlgren, Jim Maurer (personnel manager) and Rick Frazier (Ahlgren's superior). The most current EEOC filing by Plaintiff, at that time, had been on October 18, 1985, approximately three months before the verbal warning. There is no indication that any of the persons present at the January 6 meeting demonstrated a retaliatory motive, and, as a mat-

ter of law, three months is too long to support an inference of retaliation. *Brown v. ASD Computing Center,* 519 F.Supp. 1096 (S.D.Ohio 1981).

Plaintiff received a written warning on February 7, 1986 and was then dismissed on March 3, 1986. At that point, the most current EEOC filing by Plaintiff had been her January 31, 1986 claim. Thus, her written warning was issued one week after the filing and Plaintiff was discharged approximately one month after the filing. Compared to the verbal warning, the timing of these actions was much more proximate to the EEOC filings. Because the Court must in the context of a Motion for Summary Judgment read the facts in a light most favorable to the non-moving party, Defendant's Motion is hereby denied to the extent that Plaintiff alleges retaliation regarding the written warning and termination.

IT IS SO ORDERED.