**Daphne LESLIE, Plaintiff,**

v.

**MOBILE TRANSIT AUTHORITY, Defendant.**

Civil Action No. 96–0254–RV–C.

United States District Court,
S.D. Alabama,
Southern Division.

March 31, 1997.

Joseph E. Carr, IV, Mobile, AL, for plaintiff.

K. Paul Carbo, Jr., Cherry, Givens, Peters, Lockett & Diaz, P.C., for defendant.

VOLLMER, District Judge.

## ORDER

Presently before the court is defendant's motion for summary judgment (Doc. 10) with a supporting brief (Doc. 11). Plaintiff filed a response (Doc. 16) in opposition to the motion along with an affidavit of plaintiff (attached to Doc. 15). Thereafter, defendant filed a reply brief (Doc. 17). At the request of the court, plaintiff has also filed a supplemental response to defendant's motion for summary judgement (Doc. 19). The court has carefully reviewed the law and considered the arguments of the parties. For the reasons set forth below, it is the decision of the court that defendant's motion for summary judgment is due to be granted.

This action was brought by plaintiff Daphne Leslie ("Leslie"), a former employee of defendant Mobile Transit Authority ("MTA"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (as amended), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 to redress alleged instances of discrimination in employment. Leslie is a black female. MTA employed Leslie as a transportation planner from September 17, 1990 to September 19, 1994, the day Leslie was discharged. Leslie asserts two claims in her complaint: (1) that she was illegally discharged on the basis of her race and (2) that

she was discharged in retaliation for filing a discrimination charge against MTA with the EEOC. Leslie seeks reinstatement to her position, back pay, compensatory damages, punitive damages, costs, attorney's fees, and an injunction prohibiting MTA from committing further acts of discrimination against her.

## I. BACKGROUND

### A. *Jurisdiction*

Plaintiff's prayers for relief are based on 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 2000e *et seq.* Therefore, the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### B. *Venue*

Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b).

### C. *Standard of Review*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Adickes v. S.H. Kress, Inc.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). All evidence must be viewed in the light most favorable to the nonmoving party. *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991); *Langston v. ACT,* 890 F.2d 380, 383 (11th Cir.1989). In ruling on a motion for summary judgment, the function of the Court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is an issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 242–43, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986).

The standard for summary judgment is the same as that for a directed verdict: "the trial judge must grant [the motion] if, under governing law, there can be but one reasonable

conclusion as to the verdict." *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir. 1996). To avoid an adverse ruling on a motion for summary judgment, "the nonmoving party must provide more than a mere scintilla of evidence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997). Rather, "there must be a substantial conflict in evidence to support a jury question." *Id.* (quoting *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)).

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The facts pertinent to the resolution of defendant's motion for summary judgment are generally undisputed. Where there is any discrepancy in the record, the court views the evidence in the light most favorable to plaintiff, the nonmovant.[1] At all times material to this lawsuit MTA, a public corporation, operated under a contract with ATE Management and Services Co., Inc. ("ATE"). ATE provided management services to MTA. One such service was the provision of the General Manager of MTA. Joint Pretrial Document (Doc. 18), Statement of Uncontested Facts ¶ 2. MTA is presently is receivership. *See* Defendant's Exhibit 3.

Leslie was hired by MTA on September 17, 1990 as a transportation planner. She was responsible for assisting in the performance of transportation planning activities (required by the Department of Transportation to maintain federal funding), assisting and developing planning activities for the transportation needs of the elderly and the disabled, assisting in the development of the marketing and public relations program, reviewing and updating marketing programs, and establishing policy and procedure for all planning functions including grants dealing with MPO Section 15 reporting and federal and state regulations. Joint Pretrial Document (Doc. 18), Statement of Uncontested Facts ¶ 4.

In August of 1993, Leslie filed a complaint with the EEOC charging that she was the

---

1. In considering a motion for summary judgment, the Court views "the evidence and all inferences arising therefrom in the light most favorable to the nonmoving party." *Young v.*

*City of Augusta,* 59 F.3d 1160, 1163 n. 4 (11th Cir.1995). Therefore, the "facts" as stated here are not necessarily those that would be found by a jury at trial.

subject of discriminatory pay disparity because she received less renumeration than a male counterpart. *Id.* ¶ 5. At the time this complaint was filed, Randy Greene was the General Manager of MTA. Ultimately, Leslie decided not to pursue the complaint. Leslie Depo. at 61.

During the summer and fall of that 1994, MTA experienced extreme financial difficulties. MTA ended fiscal year 1994 with a deficit of approximately $640,000. Howard Aff. (1st) at 2 (attached to Doc. 11). MTA's financial difficulties continued through 1995 to the point where it ceased operations from July 21, 1995 until September 5, 1995. Def.'s Ex. 9 at 9.

At the time Leslie was terminated, the General Manager of MTA was John C. Pippin ("Pippin"). Joint Pretrial Document (Doc. 18), Statement of Uncontested Facts ¶ 9. Pippin hired Mr. Lee Roe, III as his executive secretary. At Pippin's request, Mr. Roe performed a transaction analysis of MTA's administrative staff. After reviewing the marketing manager position, held by Leslie, Mr. Roe concluded that the marketing manager position was unnecessary. *Id.* ¶ 13. Leslie was terminated on September 19, 1994 by written notice dated September 12, 1994. *Id.* ¶ 11. The letter, issued and signed by Pippin, set forth three reasons for the discharge: (1) that her job performance was less than satisfactory, (2) that there were to be personnel cutbacks due to "shortness in financial resources", and (3) that the position she held had been eliminated. *Id.* Leslie appealed her termination to the MTA Board of Directors. On October 17, 1994, the Board of Directors heard the appeal and affirmed management's decision to terminate Leslie. *Id.* ¶ 12. Subsequently, Leslie filed a complaint with the EEOC regarding her termination. *Id.*

As of July 31, 1994, MTA employed 102 people, of whom 29 were white and 73 were black; 17 people were employed in administrative positions (such as that held by Leslie), 12 black employees and 5 white employees. *Id.* ¶ 16.

## A. Discriminatory Discharge

### 1. Standards

A plaintiff in a Title VII action[2] has two legal theories available for the prosecution of her claims. One is known as "disparate impact". Under the disparate impact theory, the plaintiff asserts that a facially neutral employment practice was used to unlawfully discriminate against her. Subjective intent to discriminate need not be proven. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 645–46, 109 S.Ct. 2115, 2118–19, 104 L.Ed.2d 733 (1989) (superseded by statute on other grounds). Leslie has not asserted her claim under this theory; and, the court finds it inapplicable to her case: A plaintiff suing under the disparate impact theory must demonstrate that a specific employment practice has created the disparate impact. *Id.* at 656–57, 109 S.Ct. at 2124–25. Leslie never attempted to make this necessary showing.

The other theory is known as "disparate treatment". Though Leslie did not expressly state in her complaint that she is operating under this avenue of Title VII, the court finds that it is the relevant paradigm for the present action.[3] Therefore, disparate treatment theory will be applied to Leslie's claim of discriminatory discharge. To establish a *prima facie* case of discriminatory discharge, Leslie must prove: (1) that she is a member of a protected minority, (2) that she was qualified for the job from which she was discharged, (3) that she was discharged, and (4) that her former position was filled by a non-minority. *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1525 (11th Cir.1991) (superseded by statute on other grounds) (citing *Jones v. Lumberjack Meats, Inc.,* 680

---

**2.** In this case, plaintiff Leslie seeks redress via 42 U.S.C. § 1981 and 42 U.S.C. § 1983 in addition to the relief provided by Title VII. The allocation of burdens and elements of a *prima facie* case— set forth *infra*—are the same for all employment claims stemming from these three statutory provisions. *See Richardson v. Leeds Police Dept.,* 71 F.3d 801, 805 (11th Cir.1995); *Turnes v. Am-*

South Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994).

**3.** Furthermore, at the final pretrial conference held in this matter on March 3, 1997, counsel for plaintiff conceded that Leslie is only proceeding under the disparate treatment theory.

F.2d 98, 101 (11th Cir.1982)). *See also Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995). Alternatively, Leslie may satisfy the fourth requirement by showing that she was terminated while others having comparable or lesser qualifications and not in her protected class were retained, or that she suffered from differential application of work or disciplinary rules. *Weaver,* 922 F.2d at 1525. If the plaintiff fails to establish a *prima facie* case of discrimination, then the defendant need not proffer any valid reasons for its action. *Hawkins v. Ceco Corp.,* 883 F.2d 977, 981 (11th Cir.1989). But if the plaintiff does meet her *prima facie* burdens by a preponderance of the evidence, then a presumption of impermissible discrimination arises. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).[4]

When the plaintiff meets these predicates, the burden of production shifts to the defendant employer who must then come forth with admissible evidence that articulates a legitimate, nondiscriminatory reason for the adverse employment action "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the employment action." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden of proving intentional discrimination, however, always remains with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. So when the defendant meets its burden of production, the presumption of intentional discrimination raised by the *prima facie* case is rebutted and drops completely from the case. *Hicks,* 509 U.S. at 510–11, 113 S.Ct. at 2748–49; *see also Trotter*

*v. Board of Trustees of the University of Alabama,* 91 F.3d 1449, 1455 (11th Cir.1996).[5] This leaves the plaintiff with her ultimate burden of proving by a preponderance of the evidence that the adverse employment action was motivated by unlawful discriminatory intent.[6] *Trotter,* 91 F.3d at 1457.

The methodology for analyzing plaintiff's allegation from this point forward is well-articulated in *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997):

Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the prima facie case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision. According to the Supreme Court:

[The plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. . . .

[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

[*Burdine,* 450 U.S. 248, 256, 101 S.Ct. at 1090–91, 1095 ] In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.

---

4. The burden-shifting framework articulated in *McDonald Douglas* and its progeny is used in those cases, which are many, where the Title VII plaintiff has no direct evidence of discrimination but can come forth with circumstantial evidence of discrimination. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–28 (11th Cir.1997).

5. In meeting its burden of production, the employer "need not persuade the court that it was actually motivated by the proffered reasons." *Trotter,* 91 F.3d at 1455 (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094). This intermediate burden of production is satisfied if the

employer produces "admissible evidence which would allow the trier of fact to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096).

6. Discriminatory intent is the touchstone, for "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is **not** an unlawful employment practice under Title VII." *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1074 (11th Cir.1995) (emphasis in original).

(citations and parentheticals omitted). Thus, a plaintiff is not required to introduce new evidence once the burden has shifted back to her: she may escape summary judgment by relying solely on the evidence presented in the *prima facie* case if it sufficiently evidences discriminatory intent or discredits the employer's proffered explanation. Nonetheless, it must always be remembered that "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] ... has offered evidence of legitimate, non-discriminatory reasons for its actions." *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376–77 (11th Cir.1996) (quotations and citations omitted).

In *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court held that judgment for the plaintiff is not compelled when a plaintiff successfully discredits all of the employer's proffered nondiscriminatory reasons for the adverse employment action. At the same time, the Court "was careful to explain that such disbelief [of the employer's proffered reasons] in tandem with the plaintiff's *prima facie* case, is sufficient to permit the factfinder to infer discrimination." *Combs,* 106 F.3d at 1529. The Eleventh Circuit has thus interpreted *Hicks* to mean "that a plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs* at 1529. Therefore, in ruling on the present motion for summary judgment, this court must determine whether the plaintiff has cast "sufficient doubt" on the employer's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that those ostensible reasons were not what actually motivated the adverse employment action. *See Combs* at 1538–39.

#### 2. *Application to the present case*

The court agrees with MTA that Leslie has satisfied the first three elements of a *prima facie* case of discriminatory discharge. There is a dispute as to whether Leslie has satisfied the fourth requirement; however,

for the purposes of the present motion, the court will assume that she has satisfied the fourth requirement, thereby establishing a *prima facie* case of discriminatory discharge.

■ Leslie having presented a *prima facie* case of discriminatory discharge, the burden shifted to MTA to produce evidence that it terminated Leslie for a legitimate, nondiscriminatory reason. MTA presented three reasons why Leslie was terminated. These reasons were initially set forth in the discharge letter of September 12, 1994. The first is that her position—marketing manager—did not have enough duties and responsibilities to justify continuing that position. This is coupled with the second reason, namely, MTA's decision to make personnel cutbacks in an attempt to reduce payroll, thereby easing its severe financial situation. When the economic crisis became apparent, MTA's management considered, *inter alia,* the elimination of non-essential positions as a response to the financial quagmire. General Manager John Pippin, utilizing the transaction analysis prepared by executive secretary Lee Roe, determined that Leslie's position was non-essential-eliminating the position would save MTA much needed funds. As its third and final reason, MTA asserts that Leslie's job performance was deficient. One of Leslie's major functions was to periodically prepare several reports, including the Section 15 report, the Form 33 mileage report, and PIP reports. When Pippin arrived as MTA's General Manager in 1994, he discovered that these reports were either inaccurate or unprepared. *See* Leslie Depo. at 32–38; Roe Depo.; Pippin Aff. (Def.'s Ex. 2). Since MTA's federal funding depended to a large extent on the accuracy of these reports, the deficiency of these reports was a serious matter which exacerbated MTA's ongoing financial crisis. MTA states that Leslie was notified of her unsatisfactory performance but failed to improve.

■ Since MTA presented legitimate, nondiscriminatory reasons for Leslie's dismissal, the presumption of intentional discrimination raised by the *prima facie* dropped completely from the case. This forced Leslie to either (1) come forth with evidence demon-

strating, by a preponderance of the evidence, that the adverse employment action was motivated by unlawful discriminatory intent or (2) show that MTA's proffered explanations are pretextual. Leslie never produced any direct evidence of discriminatory intent; she only attempted to stand on her *prima facie* case and a rebuttal of MTA's explanation for the discharge. Therefore, the court need only consider whether Leslie adduced evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by MTA were not the real reasons for her discharge.

In response to MTA's contention that it discharged Leslie because it was eliminating her position, Leslie has come forth with evidence that her position, or some form of it, was reconstituted in September of 1995 when MTA emerged from its financially imposed shutdown.[7] Howard Aff. (2nd) at 1–2 (attached to Doc. 19). Howard does not state which individual holds the position. However, reading this evidence in the light most favorable to plaintiff, the court concludes that a reasonable factfinder could find that this particular explanation offered by MTA is pretextual.

Next, in response to MTA's contention that it discharged Leslie because of her poor performance, Leslie offers the following rebuttal evidence: (1) Mona Howard's affidavit[8] which sets forth Howard's "opinion that Ms. Leslie satisfactorily performed and competently discharged all duties and tasks which were assigned to her," and states that Howard was not consulted by management *re* Leslie's discharge, (2) the affidavits of Howard and Leslie[9] which state that Leslie did not receive adequate job performance evaluations, and (3) Leslie's opinion[10] that Mr. Lee was not qualified to perform the transaction analysis of MTA administrative positions which Pippin used in making his decision to terminate Leslie. While this is not particu-

larly persuasive evidence, for purposes of this summary judgment motion the court will assume that Howard's opinion could lead reasonable jurors to conclude that the poor performance explanation offered by MTA is pretextual.

Finally, in response to MTA's contention that it discharged Leslie because it was attempting to ease its financial burden by making personnel cutbacks, Leslie has offered the following rebuttal evidence: the opinion of Leslie's immediate supervisor, Mona Howard, that Leslie's position was no more or less vital to MTA than that of Lee Roe (Pippin's executive secretary). *Id.* at 1–2. The court finds that this conjecture is not evidence sufficient to permit a reasonable factfinder to conclude that this explanation was not the real reason for Leslie's discharge. There is substantial evidence in the record demonstrating that MTA was in a harsh financial quandary before, during, and after the time that Leslie was discharged. *See* Howard Aff. (1st) at 1–2 (attached to Doc. 11); Pippin Aff. at 1–2; Roe Depo. at 21–22; Leslie Depo at 15–16; Letter of Notice (attached to Leslie Depo.); Def.'s Ex 3; Def.'s Ex. 4. Testimony of Howard as to her opinion that Leslie was of equal value to MTA as Roe would not reduce the force of the evidence demonstrating the financial crisis and the corresponding need of MTA to reduce expenses.

Leslie has failed to adduce evidence sufficient to permit a reasonable factfinder to conclude that MTA's financial crisis was not the real reasons for her discharge. Therefore, MTA's motion for summary judgment on the discriminatory discharge claim is due to be granted. *See Combs supra* (reversing district court's denial of employer's motion for judgment as a matter of law where the plaintiff failed to produce evidence sufficient to permit reasonable jurors to reject the

---

7. This evidence comes from the March 13, 1997 affidavit of Leslie's former immediate supervisor, Mona Howard. In the affidavit, Howard refers to September, 1996 instead of September of 1995. The court will presume that Howard was referring to the earlier date since the weight of the evidence produced in this case has demonstrated that the MTA shutdown lasted from July 21, 1995 until September 5, 1995.

8. Howard Aff. (2nd) (attached to Doc. 19).

9. *Id.;* Leslie Aff. (1st) at 3 (attached to Doc. 15).

10. *See* Leslie Aff. (1st) at 3–4 (attached to Doc. 15).

employer's proffered explanations as pretextual).

## B. *Retaliatory Discharge* [11]

■ To prevail on her retaliatory discharge claim, Leslie must first establish a *prima facie* case by showing (1) that she engaged in a statutorily protected expression, (2) that she suffered an adverse employment action, and (3) that there is a causal relation between the protected expression and the adverse action. *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir.1994) (citations omitted). Leslie has not met her *prima facie* burdens.[12] While she engaged in statutorily protected expression when she filed her 1993 complaint with the EEOC alleging discriminatory pay disparity and suffered an adverse employment action when she was terminated on September 19, 1994, she has not demonstrated a causal link between her filing of the EEOC complaint and her discharge.

■ It is true that the causal link requirement is broadly construed: a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated. *Meeks*, 15 F.3d at 1021. However, where a substantial period of time has elapsed between the two events—engagement in the protected activity and the adverse employment action—the causal connection is less likely to exist absent evidence demonstrating a connection between the two events. In the present case, more than a year passed between the protected activity and the discharge. Leslie's discharge was not temporally close enough to support an inference of causal connection. *See Valdez v. Mercy Hospital*, 961 F.2d 1401, 1403 (8th Cir.1992) (no retaliation found where six months passed between protected activity and termination) (superseded by statute on other grounds); *Balletti v. Sun–Sentinel Co.*, 909 F.Supp. 1539, 1549 (S.D.Fla.1995) (elapse of six months between grievance and discharge did not permit inference of causal connection); *Juarez v. Ameritech Mobile Communications, Inc.*, 746 F.Supp. 798, 804 (N.D.Ill.1990) (six months between complaint and termination too remote), *aff'd* 957 F.2d 317 (7th Cir.1992); *Maldonado v. Metra*, 743 F.Supp. 563, 568 (N.D.Ill.1990) (five month lapse between protected expression and termination too remote); *Reeves v. Digital Equipment Corp.*, 710 F.Supp. 675, 677 (N.D.Ohio 1989) (no retaliation where three months passed between protected expression and adverse employment action); *Brown v. A.S.D. Computing Center*, 519 F.Supp. 1096, 1116–17 (S.D.Ohio 1981) (discharge four months after protected activity too remote).

Because Leslie cannot rely on the mere facts of her filing an employment grievance and her discharge one year later, she has the burden of producing evidence demonstrating the existence of the causal link. The only evidence offered by Leslie is (1) Leslie's own statement that her supervisors were outraged at the filing of the EEOC complaint [13] and (2) Howard's "general observation that after filing the grievance and the EEOC complaint, the relationship between higher management and Ms. Leslie became strained." [14] This evidence is not sufficient to overcome MTA's motion for summary judgment. Leslie's own statement amounts to nothing more than a conclusory allegation. To establish a *prima facie* case, Leslie is required to offer more than conclusory allegations. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376–77 (11th Cir.1996).

Likewise, Howard's affidavit fails to sufficiently evidence the requisite causal link. Leslie signed her EEOC claim on August 10, 1993. *See* Charge of Discrimination (Pl.'s Ex 1(f)). Howard did not begin her employment with MTA until the same month, August of 1993; and, Howard did not begin to super-

---

**11.** The burden shifting framework, *see supra*, is applicable to claims for retaliatory discharge and is applied in the same fashion as that employed for claims of discriminatory discharge. *See Meeks v. Computer Associates International*, 15 F.3d 1013 (11th Cir.1994).

**12.** Whether plaintiff has made out a *prima facie* case is a question of law. *See Hill v. Metropoli-* tan Atlanta Rapid Transit Authority, 841 F.2d 1533 (11th Cir.1988) (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)).

**13.** Leslie Aff. (1st) at 2 (attached to Doc. 15).

**14.** Howard Aff. (2nd) at 1 (attached to Doc. 19).

vise Leslie until September of 1993.[15] Since Howard was not employed at MTA prior to August of 1993, it was not possible for her to have observed Leslie's relationship with management prior to Leslie's filing of the EEOC complaint for more than a few days. This is not sufficient time for an employee, especially a new employee like Howard, to make a valid comparison between the management's before and after treatment of another employee.

### III. CONCLUSION

In light of the foregoing, MTA's motion for summary judgment is due to be, and hereby is, GRANTED. Final judgment in favor of defendant and against plaintiff will be entered by separate order.