*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA CESARINI,

Plaintiff-Appellant,

v

FCA US, LLC, formerly known as CHRYSLER GROUP, LLC,

Defendant-Appellee.

UNPUBLISHED
June 27, 2019

No. 342674
Oakland Circuit Court
LC No. 2016-153846-CD

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this action arising from defendant's termination of plaintiff's employment, plaintiff, Linda Cesarini, appeals as of right the trial court's order granting defendant's, FCA US, LLC's, motion for summary disposition under MCR 2.116(C)(10), and thereby dismissing plaintiff's claims for breach of contract and unlawful retaliation in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2701 *et seq.* We affirm.

Plaintiff began working for defendant in 1995. Until 2012, she primarily worked in digital or website marketing for defendant. In October 2012, plaintiff filed a complaint against defendant with the Equal Employment Opportunity Commission (EEOC), alleging that she was the subject of sexual harassment and discrimination by her supervisor, Thomas Laymac. After investigating the matter, the EEOC issued plaintiff a letter explaining that there appeared to be insufficient grounds to further investigate her complaint. Defendant also conducted its own internal investigation. On October 19, 2012, plaintiff was moved to a new position with a different manager and director, but still within the marketing department. At that time, plaintiff began working with Walid Saba's group where she was involved in product placement and special events. She was subsequently moved to another position, but still in Saba's group, handling secondary automobile shows.

In February 2015, plaintiff inquired about taking a leave of absence to help care for family members who were in need of assistance. According to plaintiff, defendant had a leave policy that both encouraged and permitted employees to take personal leaves of absence. When

she inquired about a leave of absence, Joseph Trotta, the manager of defendant's Human Resources (HR) Department, referred her to HR staff, Carol Cislo and Amy McDonald. Plaintiff was given a leave-of-absence request form and was told to read it thoroughly because it set forth the terms and conditions of any leave of absence. After reviewing the forms, plaintiff had various questions for the HR staff that she presented in a series of exchanges between February 18, 2015, and February 26, 2015. In response to one of plaintiff's questions, McDonald advised plaintiff on February 20, 2015, as follows:

> As you plan to take a Leave of Absence, please keep in mind that benefits are impacted, as well as job security. Please read the Leave of Absence form carefully (provided by Carol) including the information on the 2nd page. In addition, I am providing a packet of Benefits Upon Separation - Leave of Absence for you to consider.

On February 22, 2015, plaintiff sent an e-mail to McDonald and Cislo, asking some follow-up questions, including:

> I understand my job is not protected during my leave however, when I return my grade band and salary will remain the same, correct? Meaning I will be placed in a position at my grade band/current job classification level. Is that correct?

McDonald responded as follows:

> When you are ready to return from a LOA, reinstatement to former or equivalent position (same comp level and pay) will be attempted but not guaranteed. If a comparable position is not available, you would be placed on lay-off upon your return to work.

On February 26, 2015, plaintiff sent the following message to McDonald and Cislo:

> Amy — just want to make sure I understand your note below that my current classification, comp pay and benefits would remain the same upon my return however the position and/or department is not guaranteed. Is that correct? So when I return, if a comparable position cannot be located in the Marketing area, they will look outside in other departments, is that correct?
>
> Just want to make sure I understand the rules for personal leave.

McDonald responded to that inquiry as follows:

> Yes, that is correct. You will maintain same pay and comp level and benefits with that comp level upon your return. For Leave of Absence situations, the exact job is not guaranteed. Perhaps jobs outside marketing would be looked at if they meet your skill set. Layoff is a possibility as well if a comparable job is not available.

Plaintiff submitted a request for a six-month leave of absence, beginning June 2, 2015, until November 30, 2015, which was approved.[1] She assured her manager, director, and the HR representatives that she intended to return to work at the end of her leave of absence.

In late October 2015, plaintiff contacted the HR representatives about returning to work and identifying an available position for her. On November 6, 2015, she was informed that the HR department was aware of her intent to return to work and it was investigating what positions were available. She was advised that nothing was available, so her leave of absence was extended to March 1, 2016. Plaintiff continued to communicate with the HR staff about a position and was advised in February 2016 that there still was no position available for her and that her leave of absence was extended to April 1, 2016. Shortly thereafter, plaintiff was advised that she would not be returning to work and her employment was terminated as of April 30, 2016.

Plaintiff filed this action alleging claims for breach of contract and unlawful retaliation in violation of the ELCRA. Defendant moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). The trial court granted defendant's motion with respect to the breach-of-contract claim because there was no evidence that defendant promised to reinstate plaintiff to her same or another position after her leave of absence ended. Further, plaintiff was an at-will employee and any agreement to reinstate her would not have changed her at-will status, thereby enabling defendant to terminate her employment for any reason. The court also dismissed plaintiff's retaliation claim because it was based on plaintiff's theory that defendant terminated her in 2016 in retaliation for her 2012 EEOC complaint, but plaintiff could not establish a causal connection between her 2016 discharge and the complaint she filed approximately four years earlier. Plaintiff appeals those decisions.

## I. STANDARD OF REVIEW

This Court reviews a trial court's summary disposition decision de novo. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests the factual support for a claim. The court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014).

---

[1] Plaintiff did not take a leave of absence under the Family and Medical Leave Act, 29 USC 2601 *et seq*.

## II. BREACH OF CONTRACT

"Generally, and under Michigan law by presumption, employment relationships are terminable at the will of either party." *Lytle v Malady (On Reh)*, 458 Mich 153, 163; 579 NW2d 906 (1998). Employment contracts for an indefinite period produce a presumption of employment at will absent distinguishing features to the contrary. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 383; 563 NW2d 23 (1997). An employee whose employment relationship is at will can have her employment terminated at any time for any, or no, reason. *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982). A promise to terminate only for just cause may overcome the presumption of at-will employment. *Dolan*, 454 Mich at 383-384. Company policies that instill legitimate expectations of job security in employees also may overcome the presumption. *Id*. at 384.

The leave-of-absence form that plaintiff completed when requesting her leave of absence stated the following conditions applicable to her leave of absence:

> A. A Leave of Absence Form is required for absence of more than five (5) consecutive working days. . . . If you will be on Leave of Absence for thirty (30) working days or longer, you will be temporarily separated from the roll as of your last day worked (except if your Leave of Absence is for jury duty). *Reinstatement to your former position or equivalent position cannot always be guaranteed. . . .*

> * * *

> D. If a reduction in force has taken place during your Leave that affects you, you will be placed on layoff upon your return for work at the expiration of your Leave.

> E. If you return earlier than scheduled, you will be considered for reinstatement or layoff depending on current operating conditions.

> * * *

> L. This document sets forth all of the conditions pertaining to your Leave of Absence. Chrysler LLC alone, in its sole discretion, reserves the right to amend, modify, terminate or suspend the conditions of your Leave of Absence. Such amendment, modification, termination or suspension must be in writing, signed by an authorized representative of Chrysler LLC Human Resources Department. In the event this document conflicts with or supplements the terms of Chrysler LLC's Leave of Absence Procedure, the Procedure will govern. [Emphasis added.]

Plaintiff's breach-of-contract claim is premised on the existence of either (1) an express agreement, either oral or in writing, regarding job security, or (2) a contractual provision, implied in law, based on policies and procedures that instilled a legitimate expectation of job security.

To prove her claim based on an express agreement, either oral or in writing, plaintiff must show, by clear and unequivocal terms, mutual assent to permanent employment, rather than

-4-

merely an optimistic hope of a long relationship. In *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 640-642; 473 NW2d 268 (1991), our Supreme Court explained:

> The starting point in analyzing oral statements for contractual implications is to determine the meaning that reasonable persons might have attached to the language, given the circumstances presented. In our analysis, we agree with the federal district court in *Carpenter v American Excelsior Co*, 650 F Supp 933, 936, n 6 (ED Mich, 1987):
>
> > After all *Lynas*[2] as well as reality compels recognition of the fact that neither party to the beginning of an employment relationship expects it to be unsatisfactory, and both hope it will have a significant duration. This hope and noncontractual wish is expressed in terms of language such as "as long as you do the job."
>
> Consequently, the court stated that any orally grounded contractual obligation for permanent employment "must be based on *more than* an expression of an optimistic hope of a long relationship." *Id*. (Emphasis added.)
>
> Along the same lines, Justice Griffin's remarks in *Bullock, supra* at 517,[3] are instructive:
>
> > Surely, a modicum of realism and common sense is needed. An assurance such as that alleged in the instant case simply cannot be separated from the realities of the working world. It should be recognized that "lifetime" employment contracts are extraordinary and, being so, "must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation." [GRIFFIN, J., concurring in part and dissenting in part. Citations omitted.]
>
> To be sure, because of the difficulty in verifying oral promises, the statements must clearly permit a construction which supports the asserted meaning. The "overreaching principle of contract interpretation" is that the court looks to all the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent. Farnsworth, Contracts, § 7.10, p 492.

Plaintiff primarily relies on e-mails exchanged with Cislo and McDonald related to her leave of absence to support her breach-of-contract claim on the basis of promises that were made to her before she took a leave of absence. Plaintiff argues that the HR staff made express assurances to her in these e-mails exchanged on February 26, 2015:

---

[2] *Lynas v Maxwell Farms*, 279 Mich 684; 273 NW 315 (1937).

[3] *Bullock v Auto Club of Mich*, 432 Mich 472; 444 NW2d 114 (1989).

[*From plaintiff*:] Amy — just want to make sure I understand your note below that my current classification, comp pay and benefits would remain the same upon my return however the position and/or department is not guaranteed. Is that correct? So when I return, if a comparable position cannot be located in the Marketing area, they will look outside in other departments, is that correct?

Just want to make sure I understand the rules for personal leave.

[*McDonald's response*:] Yes, that is correct. You will maintain same pay and comp level and benefits with that comp level upon your return. For Leave of Absence situations, the exact job is not guaranteed. Perhaps jobs outside marketing would be looked at if they meet your skill set. Layoff is a possibility as well if a comparable job is not available.

This e-mail exchange does not contain any clear and unequivocal representation that plaintiff would be guaranteed a position after her leave of absence. Plaintiff's own e-mail demonstrates her understanding that there was no guarantee that she could return to a position in the marketing department. While she contends that McDonald assured her that defendant would place her in another position, McDonald's response that "[p]erhaps jobs outside marketing would be looked at if they meet your skill set" cannot be understood as a clear and unequivocal statement that a position outside of marketing was guaranteed. Indeed, McDonald also made clear that layoff was a possibility if no comparable job was available. Moreover, plaintiff admitted in her deposition that on February 22, she was told that when she was ready to return from her leave of absence, her reinstatement to her former position or another comparable position would be attempted, but it was not guaranteed. At most, plaintiff has presented evidence of only expressions of optimistic hope that efforts would be made to place her in a comparable position, but such statements are insufficient to support a claim for breach of contract based on an express agreement of continued employment. Accordingly, the trial court did not err by granting summary disposition for defendant on this theory.

Alternatively, plaintiff argues that the statements by the HR staff instilled in her a legitimate expectation of job security to support a contract implied in law based on defendant's policies and procedures. In *Lytle*, 458 Mich at 164-165, the requirements for proving this theory were explained as follows:

We have recognized a two-step inquiry to evaluate legitimate-expectations claims. The first step is to decide "what, if anything, the employer has promised," and the second requires a determination of whether that promise is "reasonably capable of instilling a legitimate expectation of just-cause employment . . . ." *Rood* [*v Gen Dynamics Corp*, 444 Mich 107, 138-139; 507 NW2d 591 (1993)].

Not all policy statements will constitute a "promise," which we have recognized as a

"manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding

-6-

that a commitment has been made." [*Id*. at 138-139, quoting the Second Restatement of Contracts, § 2(1).]

A lack of specificity of policy terms or provisions, or a policy to act in a particular manner as long as the employer so chooses, is grounds to defeat any claim that a recognizable promise in fact has been made. *Rood*[, 444 Mich] at 139. In this case, plaintiff's proof lacks both the specificity and commitment that raises an employer's policy to the level of a promise.

In this case, it was made clear to plaintiff, both through the e-mail exchanges and the leave-of-absence form, that defendant was not making any guarantees regarding future job placement or security when plaintiff was ready to return to work. Nothing in the communications to plaintiff could have created a legitimate expectation that plaintiff was assured a position in the future. While defendant's policies and the statements from the HR staff indicated that they would look into placing plaintiff in another position, depending on her qualifications, there were no assurances that she would be offered her former position or another position. Plaintiff places emphasis on the HR staff's statement that they "will" look for a position for her in another department if there were no openings in marketing. However, defendant's agreement to look into or consider placing plaintiff elsewhere could not have created a legitimate expectation that another position would actually be found or guaranteed.

Plaintiff attempts to draw a distinction between termination and layoff, claiming that she was assured that she "would" be placed on layoff if no positions were available and, instead of being laid off, her employment was formally terminated. Plaintiff is drawing a distinction without a difference in the case at bar. Cislo and McDonald testified that there was no difference between a layoff and permanent separation. Laid off employees in plaintiff's group were not called back to work. Trotta testified that defendant had no layoff policy for plaintiff's group after 2009 and, therefore, statements referring to layoff were inaccurate for that reason. Nonetheless, any assurances about being placed on layoff if there was no job available could not have created any expectation of continued employment because plaintiff has not identified any evidence of a formal layoff policy that involved recalling employees, and plaintiff does not otherwise explain how she was led to believe that placing her on layoff status afforded her any specific rights to being reinstated.

This case is factually similar to *Kvintus v RL Polk & Co*, 3 F Supp 2d 788, 791-792 (ED Mich, 1998), aff'd 194 F3d 1313 (CA 6, 1999). [4] In that case, the plaintiff took a medical leave of absence and, after he returned to work, his position was eliminated and he was terminated. *Kvintus*, 3 F Supp 2d at 791-792. The plaintiff brought a claim for breach of contract predicated on statements made to him that he would not be discharged while on leave. The court explained:

---

[4] Although not binding on this Court, a lower federal court decision may be considered as persuasive authority. *In re Estate of Vansach*, 324 Mich App 371, 388, n 8; 922 NW2d 136 (2018).

Plaintiff predicates his claim of just cause employment upon certain conversations that plaintiff states that he had with Mike Lesinski and Paul Inson before agreeing to the medical leave which was to commence in July of 1996. In his one sentence argument in support of his claim, plaintiff while acknowledging his at-will employment status, states that "the terms of the contractual relationship changed when a Director of Human Resources, Paul Inson, and the Project Manager, Lesinski, repeatedly told him his job was secure." (Pl.'s Resp. at 33). Employment contracts for an indefinite duration are presumptively terminable at the will of either party for any reason or for no reason at all. *Lynas v Maxwell Farms*, 279 Mich. 684, 687, 273 N.W. 315 (1937). However, the presumption is not "a substantive limitation on the enforceability of employment contracts but merely a rule of construction." *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 597, 292 N.W.2d 880 (1980).

In order to overcome the presumption of employment at will, a party must present sufficient proof of either a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause, or it may be overcome by proofs which permit a promise implied in fact of employment security. *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 636–637, 473 N.W.2d 268 (1991). In deciding whether there was mutual assent to a just-cause provision, the Court employs an objective test "looking to the expressed words of the parties and their visible acts." *Id*. at 640, 473 N.W.2d 268 quoting *Goldman v. Century Ins. Co.*, 354 Mich. 528, 535, 93 N.W.2d 240 (1958). This Court has previously stated that any orally grounded contractual obligation for permanent employment "must be based on more than an expression of optimistic hope of a long relationship." *Carpenter v. American Excelsior Co.*, 650 F.Supp. 933, 936, n. 6 (E.D.Mich.1987). Therefore, in order to defeat a motion for summary judgment, plaintiff must show that more than a mere subjective expectancy existed that he would be terminated only for just cause. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir.1986).

In the instant case, plaintiff contends that before his July of 1996 medical leave commenced defendant's employees Inson and Lesinski repeatedly told him "that I would have a job when I came back to work." (Kvintus Dep. at 27–28). In his deposition, plaintiff stated that he did not believe he was an employee at will because "Paul had said, and Mike has said . . . they told me to take time off; you don't have to worry about it." (Kvintus Dep. at 22). Aside from the aforementioned statements, plaintiff does not offer any other evidence demonstrative of any actions undertaken by defendants which would lead plaintiff to the conclusion that his employment was not terminable at will. The plaintiff has presented no evidence on which the Court could conclude that an objective meeting of the minds between plaintiff and defendant occurred on the issue of just-cause employment.

Further, plaintiff completely ignores the significance of the provision for employment at-will endorsed by the plaintiff on his acceptance of defendant's employment offer for the position of SSD. Viewing the evidence in the light most

favorable to plaintiff, even if defendant's employees did communicate to plaintiff that he would be reinstated to his position upon his return from medical leave, defendant's promise cannot be construed as anything more than a promise to return plaintiff to an at-will position. In *Smith v. F.W. Morse & Co., Inc.*, the First Circuit held that "A contract to reinstate an at-will employee to an at-will position (from which she could immediately be removed without cause) is no contract at all." 76 F.3d 413, 426 (1st Cir.1996). The employment offer signed by plaintiff unequivocally provides for employment-at-will and was signed by the plaintiff upon his acceptance of the SSD position. Accordingly, the Court finds that plaintiff's claim for breach of just-cause contract for employment is without merit. [*Kvintus*, 3 F Supp 2d at 797-798.]

In *Kvintus*, 3 F Supp 2d at 798, the court relied on *Smith v FW Morse & Co, Inc*, 76 F3d 413, 426-427 (CA 1, 1996), in which that court analyzed statements regarding job security to an employee on maternity leave in the context of at-will employment, stating:

> We start by attempting to decipher the true nature of the appellant's claim. Her lawyers tell us that the disjointed statements made to her (e.g., "don't worry, we will manage while you are on maternity leave, your job is secure," "you will assume more responsibilities on your return," you are "wanted back") created a contract to reinstate her following the completion of her maternity leave. Yet, the appellant concedes that Bond's and Guimond's statements did not alter the durational component of the at-will employment relationship. A contract to reinstate an at-will employee to an at-will position (from which she could immediately be removed without cause) is no contract at all. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 n. 5 (Tex.1994) [abrogated on other grounds by *Marsh USA, Inc v Cook*, 354 SW3d 764 (Tex 2011)] (holding that, as long as the at-will character of the employment relationship remains unchanged, any "promise made by either employer or employee that depends on an additional period of employment is illusory because it is conditioned upon something that is exclusively within the control of the promisor"); E. Allan Farnsworth, *Contracts* §§ 2.13, 2.14 (2d ed. 1990) (explaining that promises to maintain an at-will relationship are illusory); *cf. Butler*, 629 A.2d at 94 (terming an analytically equivalent argument "a thin reed").

> Nor is this the only shortcoming in the supposed contract for reinstatement. The evidence also fails to establish either the nature of the position Smith was to assume or her proposed rate of pay. These gaps seemingly foreclose a reasonably certain computation of damages.

In this case, plaintiff could not have reasonably believed that she was assured that she would have a position to return to when she elected to take a leave of absence because she was repeatedly informed that there were no guarantees and her future employment depended upon other conditions. Plaintiff's at-will status never changed, even when she sought reinstatement. In sum, statements made by defendant's employees when plaintiff was contemplating taking a leave of absence did not assure her that she would be reinstated to a position in defendant's marketing department or some other department. Instead, because plaintiff remained an at-will

employee while on leave, she had no basis for asserting that defendant breached its contract with her by not reinstating her after her leave of absence ended.

For these reasons, the trial court did not err by granting defendant's motion for summary disposition with respect to plaintiff's claim for breach of contract.

## III. RETALIATION

The ELCRA prohibits a person from "[r]etaliat[ing] or discriminat[ing] against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a). To establish a claim for retaliation, a plaintiff must show

> (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. [*Garg v Macomb Co Comm Mental Health Servs*, 472 Mich 263, 273; 696 NW2d 646 (quotation marks and citation omitted), amended 473 Mich 1205 (2005).]

For purposes of this issue, it is not disputed that plaintiff engaged in protected activity when she filed a complaint of harassment against Laymac in 2012, that defendant was aware of the complaint, and that plaintiff's termination in 2016 qualifies as an adverse employment action. The only element at issue is whether plaintiff can prove a causal connection between her 2012 complaint and the 2016 adverse employment action.

To demonstrate a causal connection between an adverse employment action and protected activity, a plaintiff must establish that participation in the protected activity was a "significant factor" in the defendant's adverse employment action. Merely showing a causal link between the two is insufficient. *Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004). Temporal proximity between events, standing alone, is generally not enough; the plaintiff must show that defendant "took adverse employment action *because of* plaintiff's protected activity." *West v Gen Motors Corp*, 469 Mich 177, 185; 665 NW2d 468 (2003) (emphasis in original). Temporal proximity can support a causal connection between protected activity and an adverse employment action when the adverse employment action against an employee occurs very close in time upon learning of the employee's protected activity. See *Mickey v Zeidler Tool & Die Co*, 516 F3d 516, 525 (CA 6, 2008). Where there has been a lapse of time between events, a plaintiff cannot rely on temporal proximity alone, but must produce other evidence of retaliatory conduct in order to prevail. *Id*.

In *Aho v Dep't of Corrections*, 263 Mich App 281, 291-292; 688 NW2d 104 (2004), this Court explained:

> Although the timing between the protected activity and the adverse action may in some cases constitute circumstantial evidence pointing to a causal nexus, *Wrenn v Gould*, 808 F2d 493, 501 (CA 6, 1987), in this case, the time between the events was remote—approximately five years—thus seriously undermining any claim by plaintiff of a causal connection. Periods much shorter than five years

have been found to be insufficient to demonstrate a causal nexus. See, e.g., *Wixson v Dowagiac Nursing Home*, 866 F Supp 1047, 1057 (WD Mich, 1994) (seven months was too remote to support an inference of retaliation); and *Reeves v Digital Equip Corp*, 710 F Supp 675, 677 (ND Ohio, 1989) (three months was too remote to support an inference of retaliation). Courts have consistently held that a lengthy period between the protected activity and the adverse employment action precludes a nexus between the two events. See *Filipovic v K & R Express Systems, Inc*, 176 F3d 390, 399 (CA 7, 1999), quoting *Johnson v Univ of Wisconsin—Eau Claire*, 70 F3d 469, 480 (CA 7, 1995) ("A substantial lapse of time between the protected activity and the adverse employment action 'is counter-evidence of any causal connection.' "); *Vickowski v Hukowicz*, 201 F Supp 2d 195, 210 (D Mass, 2002) ("[T]he fact that four and one-half years passed between the settlement of the 1990 lawsuit and the adverse action (five and one-half years if calculated from the date the lawsuit was filed) severely undercuts, if not eviscerates, any causal connection."); and *Ways v City of Lincoln*, 909 F Supp 1316, 1325 (D Neb, 1995) (holding that five years between the prior lawsuit and allegedly retaliatory acts was too long to provide a causal nexus).

Plaintiff filed her EEOC complaint against Laymac in October 2012. Her employment was not terminated until April 2016. This lapse of time is too tenuous to support a causal connection between plaintiff's 2016 termination and the filing of her complaint against Laymac in 2012.

Plaintiff argues that other circumstantial evidence supports a causal connection between her 2016 termination and her 2012 EEOC complaint. Causation may be proven by circumstantial evidence, but it must produce reasonable inferences of causation, not mere speculation. *Shaw v City of Ecorse*, 283 Mich App 1, 14-15; 770 NW2d 31 (2009).

Although plaintiff theorizes that Laymac influenced the decisions not to reinstate her in 2015 or 2016, she failed to present any evidence that Laymac offered any input or was involved with the decision by the HR staff to not offer her another position and to instead terminate her employment. Plaintiff admitted that she had no direct contact with Laymac after she filed her EEOC complaint in 2012. She also admitted that she had no information that Laymac spoke to other employees about her (apart from one e-mail he sent to a new supervisor) after plaintiff stopped working for Laymac. She believed that comments made to other employees about her and how she was treated must have been influenced by Laymac, but she did not cite any facts to support this belief. In sum, there is no evidence that Laymac had any input or played any role in the HR staff's decision to recommend that plaintiff's employment be terminated. Plaintiff's mere belief that the 2016 decision to terminate her employment was influenced by input or comments from Laymac, unsupported by any evidence to that effect, is insufficient to establish a genuine issue of material fact regarding a causal connection between her 2012 complaint and 2016 termination.

To support her claim of a causal link between her 2012 complaint and 2016 termination, plaintiff also relies on the fact that Trotta was involved in the 2012 investigation and he was part of the HR staff who recommended that her employment be terminated in 2016. In his deposition, Trotta explained that the EEOC found insufficient evidence of sexual harassment in

the 2012 matter. He was also involved with a group that conducted an internal investigation of plaintiff's 2012 complaint, but he did not perform any of the investigative work himself. According to Trotta, a written warning was issued to Laymac, but the investigative group had decided to issue only a verbal warning. It was determined that an exchange of e-mails between plaintiff and Laymac that related to plaintiff's claim involved inappropriate conduct by both parties. After discussing the matter with the group and the legal department, Trotta rescinded the written warning.

Trotta denied that he held any personal animosity against plaintiff related to her 2012 EEOC complaint. In fact, he was the person who submitted that complaint. Moreover, it was Trotta who helped find plaintiff a new position under a different supervisor after she filed her complaint against Laymac. At that time, other departments did not want plaintiff in their groups, but Trotta was able to get her placed in another position as a result of personal favors. Although Trotta was still the HR manager at the time plaintiff was terminated, other HR staff were involved in processing plaintiff's leave-of-absence request and the efforts to find plaintiff another position after her leave of absence ended. Cislo and McDonald, who were part of the HR staff, confirmed that they were not able to find a position for plaintiff in the marketing department because no one wanted to work with her.

Defendant also presented independent evidence of the reasons why plaintiff was not reinstated to another position after her leave of absence ended. Plaintiff worked in a position on Walid Saba's staff just before she took her leave of absence. Saba explained that he was aware that plaintiff had a history of not getting along with others, but he offered her a position with his staff because her technical skills were acceptable and he knew she could do a good job. After he hired her, however, suppliers and other employees complained that they did not like working with her. Her communication and people skills were poor. She was involved in conflicts with other employees and managers, and her combative attitude was a constant theme during employee review meetings. Saba tried coaching plaintiff about being sensitive to others and to looking at the bigger picture.

Just before plaintiff started her leave of absence, she was told in an annual performance review that she would not be promoted to a management position. That recommendation was due to her difficulty working with others. Just before plaintiff took her leave of absence, Saba contacted the HR staff to discuss moving plaintiff to a new position under a new supervisor in the licensing department. When plaintiff was offered the licensing position, she instead opted to take the leave of absence. When plaintiff was ready to return to work, Saba informed the HR staff that he was willing to rehire plaintiff only for a position where she could use her technical skills. He would not take her back for a position that required people or communication skills, and he did not have any open positions for plaintiff based on those qualifications.

While plaintiff was on her leave of absence, Trotta and his staff spent six or seven months looking for another position for plaintiff after her leave of absence ended. However, managers in other departments did not want plaintiff in their group because she was "too much drama" and was difficult to manage. One of defendant's main suppliers said he would not bid on any more programs that plaintiff managed based on his prior experiences with her. Plaintiff's leave of absence was extended at least two times, even though it did not have to be extended beyond 30 days, to attempt to find plaintiff a suitable position.

-12-

In sum, defendant submitted overwhelming evidence showing legitimate business reasons for its decision to not reinstate plaintiff and to terminate her employment following her leave of absence in 2016, which had no causal nexus to plaintiff's 2012 complaint.

Plaintiff argues that defendant's proffered reasons were a pretext for the adverse employment action. We disagree. For purposes of its motion, defendant did not dispute that plaintiff could establish a prima facie case of retaliation. Once a prima facie case is established, "the burden shifts to the defendant to articulate a legitimate business reason" for the adverse employment action. *Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 281; 608 NW2d 525 (2000). "If the defendant produces evidence establishing the existence of a legitimate reason" for the adverse employment action, the plaintiff has an opportunity to prove that the proffered legitimate reason "was not the true reason, but was only a pretext" for the adverse action. *Id*. As explained in *Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998):

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.

Defendant's evidence showed that it declined to reinstate plaintiff because it had no openings in the marketing department for a position that could utilize only her technical skills, and managers were not willing to place plaintiff in a position that would require her to use communication and people skills because of her history of problems in this area. This was a legitimate, nondiscriminatory reason for not reinstating plaintiff and terminating her employment.

The submitted evidence showed that plaintiff had become a "problem" employee even before she filed the complaint against Laymac. Thereafter, she was assigned to a new supervisor, but she continued to have problems with coworkers, managers, and suppliers. Defendant's reason for terminating plaintiff's employment had a basis in fact because her problematic behavior continued to occur over the years and there were multiple individuals who had attested to problems working with plaintiff under different circumstances. Plaintiff did not present any evidence to show that this reason for her dismissal was not grounded in fact. Further, the fact that no one was willing to work with plaintiff because of her poor interpersonal and communication skills was sufficient to justify the decision to terminate plaintiff's employment.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause